(40 Misc. Rep. 635.)

BERNSTEIN et al. v. WEIR.

(Supreme Court, Appellate Term. May, 1903.)

**1. CARRIERS—FREIGHT—SPECIAL CONTRACT.**

Where shippers of freight filled out in their own blank freight receipt books, printed by an express company, a receipt, describing the freight, the consignee, and his address, and tendered it to an employé of the express company, for signature, at the shippers' store, and the employé signed and returned it, it constituted a special contract, whose conditions were binding on the principals.

**2. SAME—LIMITATION OF LIABILITY.**

A receipt issued by an express company stipulated that it should not be liable for damages from certain causes, unless the result of gross negligence or fraud, and that the shipper should not demand more than $50, unless otherwise expressed in the receipt. A shipper made no statement of value, and the employé of the express company stamped the package, "Value asked and not given." *Held*, that the shipper could recover no more than $50, where the loss resulted from ordinary negligence.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Moses Bernstein and others against Levi C. Weir, as president of the Adams Express Company. Judgment for plaintiffs, and defendant appeals. Modified.

Argued before FREEDMAN, P. J., and TRUAX and GILDERSLEEVE, JJ.

Guthrie, Cravath & Henderson (Carl A. De Gersdorff, Richard Reid Rogers, and William M. Coleman, of counsel), for appellant.

Morris Meyers, for respondents.

FREEDMAN, P. J. The plaintiffs, at their place of business, delivered to the Adams Express Company a package of silk to be forwarded to a firm in Philadelphia. The express company did not deliver the goods, nor is it able to account for them, although it made due effort to locate them. The plaintiffs had judgment for the full amount claimed, notwithstanding the limitation of liability specified in the receipt given, and from that judgment this appeal is taken.

There are two distinct lines of decisions in this state relating to the legal effect which may be given to a receipt issued by a common carrier for goods shipped, which may be respectively termed the "baggage cases" and the "freight cases." Much unnecessary confusion is caused by the arguments of counsel, presented in the endeavor to make the one line of decisions apply to the facts of a particular case, which in reality should be governed by the other. The distinction depends upon whether the circumstances under which the receipt is issued are such that the court will say that the minds of the parties met in the agreement embraced in its terms, so that the receipt constitutes the contract between the parties.

In Magnin v. Dinsmore, 56 N. Y. 168, 171, it was said:

"It is no longer open to question, in this state, that, in the absence of fraud or imposition, the rights of carrier and shipper are controlled by a con-

tract in writing delivered to the shipper by the carrier at the time of the receipt of property for transportation."

On the last appeal in that celebrated case (70 N. Y. 410, 26 Am. Rep. 608) the rule was reiterated with great emphasis as follows:

"It would be trifling with contracts deliberately made by shippers, and the decisions of our courts, and saying, in effect, that they could not by any contract limit or restrict their common-law liability, to hold that by calling ordinary neglect, from which loss ensues, a 'misfeasance' or 'an abandonment of the character of carriers,' the limitation was nullified, and the full common-law liability established. The act which will deprive the carrier of the benefit of a contract for a limited liability, fairly made, must be an affirmative act of wrongdoing, not merely ordinary neglect in the course of the bailment. It need not necessarily be intentional wrongdoing, but the mere omission of ordinary care in the safe-keeping and carriage of the goods is not the misfeasance intended by the authorities."

In the case at bar the plaintiffs had in their possession at their store a book containing Adams Express Company's freight receipts. When the goods were shipped, they tendered to the company's employé one of the receipts contained in this book, which they had filled out with the consignee's name and address and a description of the article shipped, and requested his signature, and the said employé signed the same. Nothing was said as to the terms of the freight receipt, or as to the contents or value of the package. But the employé of the express company, in the presence of the plaintiffs' representative, stamped the receipt with the words, "Value asked and not given," and, so stamped, the receipt was delivered to and retained by the plaintiffs.

The freight receipt, signed under these circumstances, bore conspicuously upon its face, over the signature, a contract containing the following provisions:

"It is part of the consideration of this contract, and it is agreed that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage * * * arising from the danger of railroads, ocean or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from whatever cause, unless in every case the same be proved to have occurred from the fraud or gross negligence of said express company, or their servants; nor, in any event, shall the holder hereof demand beyond the sum of $50.00, at which the above property forwarded is hereby valued, unless otherwise herein expressed or unless specially insured by them and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company."

In view of these facts and circumstances, it must be held that when the blank receipt was filled up by the plaintiffs at their own office, and the receipt, as thus prepared, was thereafter, namely, at the time of the delivery of the merchandise for transportation, presented by the plaintiffs to the employé of the express company for signature, it instituted a proposal on the part of the plaintiffs for a special contract, which was wholly of their own creation. And as every person is presumed to intend that which is the ordinary and natural consequence of his own proposed act, it must further be held that when the express company assented to such proposal, by signing the same and redelivering it to the plaintiffs, the proposal ripened into a special contract, and as such it became binding upon both parties.

83 N.Y.S.—4

Falkenau v. Fargo, 35 N. Y. Super. Ct. 332, affirmed in 55 N. Y. 642.

In Belger v. Dinsmore, 51 N. Y. 166–172, 10 Am. Rep. 575, where the contract was identical with the one in the present case, the court said:

"In the case under review, the plaintiff's wife received the instrument as evidence of the fact that the property was delivered by her for transportation as freight, and not merely as the ordinary baggage of a passenger; and the learned judge, in that opinion, fully recognizes the rule that a person, receiving a bill of lading on the delivery of property to a carrier for transportation in the ordinary and usual course of business, knows that it is a contract containing the terms and conditions upon which it is to be carried, and he, by the acceptance of it, assents to those terms and conditions."

The plaintiffs contend, however, that these authorities should not control, as against them, because they and their clerks testified, and the judge below must be deemed to have found it a fact, that the receipt in question was one out of a book of receipts given to them by the defendant as receipts, that the contents of said receipts had never been called to their attention, that they had never read the same, and that they did not know that each of said receipts contained a contract. This testimony should not be believed. On his cross-examination, Morris Bernstein, one of the plaintiffs, made the following admission, viz.:

"I have been in business in New York in this line about ten years, but have only been engaged in business requiring the shipment of goods outside this city for about one year. I ship, on the average, four or five packages every month by express."

But independently of that, the plaintiffs are precluded from denying knowledge. In Falkenau v. Fargo, supra, it was said:

"In regard to the provisions of that contract, plaintiffs cannot be permitted to plead ignorance."

And in Kirkland v. Dinsmore, 62 N. Y. 171, 178, 20 Am. Rep. 475, it was held:

"It is true that a contract implies an assent to its terms by the contracting parties, but a party may assent expressly or by implication. Byles, J., Van Tall v. Southeastern Railway Co., 104 Eng. Com. Law, 75. He cannot escape from the terms of a contract, in the absence of fraud or imposition, because he negligently omitted to read it; and, when the other party has a right to infer his assent, he will be precluded from denying it to the other's injury. The plaintiff is, we think, in that position. The contract was one which the parties might lawfully make. The defendant had a right to infer, from the plaintiff's acceptance of the receipt without dissent, that he assented to its terms; and now, after a loss has occurred, it is too late to object that he is not bound."

The case last cited has been followed in Germania Fire Ins. Co. v. M. & C. R. Co., 72 N. Y. 90, 28 Am. Rep. 113, and Hill v. Syracuse, B. & N. Y. R. Co., 73 N. Y. 351, 353, 29 Am. Rep. 163.

In Zimmer v. N. Y. C. & H. R. R. Co., 137 N. Y. 460, 463, 33 N. E. 642, Judge Gray said, in a case where the principal attempted to show that he was not aware of the terms of a receipt signed by his agent:

"That the plaintiff did not know of the terms of this contract is of no consequence. Coolidge was his agent, and will be presumed to have known and to have assented to the stipulation in the contract which limited the general liability of the carrier. Belger v. Dinsmore, 51 N. Y. 166, 10 Am. Rep. 575;

Steers v. Steamship Co., 57 N. Y. 1, 15 Am. Rep. 453. That presumption always holds good, unless some fraud or deception is practiced, which was not the fact in this case. There can be no question about the reasonableness of such a contract. It is based upon the consideration of a rate of transportation far below what it would have been if the carrier had assumed all the risks. It was entered into with full opportunity for ascertaining its terms, and it was incumbent upon the shipper or owner to acquaint himself with them; and, if he has not done so, he will nevertheless be held chargeable with their knowledge. Cases where parties proposing to have articles of property transported by a common carrier deliberately enter into some necessary contract relating to the transportation differ materially from those cases of travelers who commit their trunks or articles of baggage to an agent of some express or transfer company, and receive at the moment some paper, which, as it has been said, amounts simply to a voucher enabling them to follow and identify their property."

The concluding sentence of the last citation shows clearly the distinction drawn by the court between cases of shipments of merchandise made in the ordinary course of business, where ample opportunity is given to the shipper to learn the terms of the shipping contract or bill of lading, and the "baggage cases," where a traveler receives something in the nature of a check or voucher for his baggage, usually under circumstances where he is offered no choice but to take whatever is given him, and no opportunity to observe that it is, in form, a contract.

For the reasons stated, the case of Springer v. Westcott, 166 N. Y. 117, 59 N. E. 693, and the other so-called baggage cases relied upon by the attorney for the plaintiffs, may be at once disregarded.

Having now demonstrated that, under the circumstances of this case, the receipt in question constituted a contract binding upon both parties, it remains to be seen whether the terms of the contract are such that they will be effective to limit the liability of the carrier to the amount specified in the contract, in a case where, owing to the carrier's inability to explain the loss, it will be presumed to have been due to his negligence. Upon this point the plaintiffs claim that, even if the receipt was a contract binding upon the parties, it did not apply to a loss due to an unexplained cause, which is presumed to have been due to the defendant's negligence or breach of its duty as carrier; and in support of this contention they rely upon the recent cases of Simon v. Dunlap's Express Co., 38 Misc. Rep. 775, 776, 78 N. Y. Supp. 1136, and Blum v. Monahan, 36 Misc. Rep. 179, 73 N. Y. Supp. 162, which, it is claimed, have changed or modified the law with respect to the limitation of liability. But the fact is otherwise. Those cases were both decided against the carrier on the sole ground that the language of the particular contract used in each case did not, in terms, cover a loss by negligence. The courts have always held that, when a carrier wishes to relieve himself from liability for his own negligence, he must do so in apt language, which will clearly convey to the shippers the intention of the carrier. But even that rule has been somewhat modified. The case of Magnin v. Dinsmore, above cited, which the Court of Appeals at first distinguished from Belger v. Dinsmore upon the ground that the language of the contract was not such as to relieve the carrier from a loss by negligence, went to the Court of Appeals four times; and the final result was that

the court sustained the limitation of liability upon the ground that, notwithstanding there was no express reference to loss by negligence, the shipper, having failed to state the value of the goods when shipped, could not recover more than the amount fixed by the contract as the limit of recovery where no such value was stated. The court said (62 N. Y. 35, 40, 44, 20 Am. Rep. 442):

"Where there is no special contract limiting the common-law liability of the carrier, nor any notice so specially brought home to the knowledge of the shipper as to have that effect, the shipper is not bound to disclose the value of the goods, unless he is asked thereof by the carrier; but the carrier, for proper reasons (Crouch v. L. & N. W. Ry. Co., 14 C. B. 225), has a right to make inquiry and to have a true answer, and, if he is deceived by a false answer given, he will not be responsible for any loss. If, however, the carrier makes no inquiry, and no artifice is used to mislead him, he is responsible for loss, however great may be the value. * * * Where there is a special contract limiting liability, or other thing tantamount thereto, it is otherwise. * * * Where the shipper agrees with the carrier for a limited liability, he thereby expresses to the latter his estimate of the risk to be run and of the care needed, and 'holds out the package to him as an ordinary article, which he would have no objection to take as of course.' The carrier is thereby put off his guard. * * * Accepting carriage upon the terms of a limited liability, the shipper indicates his judgment of the degree of risk and of needed care;' and his silence as to the real value is the same as an assertion of mean value, thus keeping from the carrier his adequate reward, and, what is worse, misleading him as to the degree of care and security which he should provide. * * * Silence only as to value amounted to such an imposition upon the defendant as would relieve it from a liability for the total value of the goods, unless something more in its conduct is shown than negligence to carry safely and deliver promptly."

On the fourth appeal (70 N. Y. 410, 415, 26 Am. Rep. 608) the court said:

"The stringent rule of liability which the common law applies to common carriers is founded upon well-considered reasons of public policy, but it may be modified and limited by special contract fairly made. The common law is not so unjust or unreasonable as to put the common carrier beyond the pale of law, so that he cannot rely upon the contract and good faith of shippers of merchandise with whom he deals. * * * The disclosure of the value of the goods was a condition precedent to the attaching of any liability to the carrier for mere ordinary neglect, unaccompanied with any misfeasance or willful act."

Moreover, the sufficiency of the contract now under consideration has already been passed upon by the Court of Appeals. In Belger v. Dinsmore, 51 N. Y. 166, 173, 10 Am. Rep. 575, the terms of the freight receipt were identical with those of the receipt of this case. There was no valuation of the property, which was proved to be worth $467. The trial court excluded proof of negligence on the part of the express company on the ground that the receipt constituted a contract, by the express terms of which the defendant was excused from all liability, whether for negligence or otherwise, except as therein stated. This ruling was sustained by the Court of Appeals. The court said (page 172, 51 N. Y., 10 Am. Rep. 575):

"The instrument relied on as evidence of the contract, as has already been stated, does not merely acknowledge the delivery and receipt of the property in question to the express company for transportation, but, in connection therewith, it is declared to be a part of the terms and conditions on which it was received that the company was not to be responsible for loss and damages resulting from certain specified causes, unless proved to have oc-

curred from fraud or gross negligence of the company or its agents; and that the holder thereof should not, in any event, demand beyond the sum of fifty dollars, fixed as the value of the article to be carried, unless otherwise expressed.   A party accepting such an instrument, as has already been shown, declares his assent, by such acceptance, to those terms and conditions. They thereby become obligatory on both parties, and prescribe their mutual rights and obligations."

It therefore appears that there has been a direct adjudication by the Court of Appeals upon the precise form of receipt which is now before the court, in a case against the same company, where the loss. was due to an unexplained cause.   To the same effect is Toy v. Long. Island R. Co., 26 Misc. Rep. 792, 56 N. Y. Supp. 182, and the doctrine· of the Belger Case has been approved in Steers v. Steamship Company, 57 N. Y. 1, 15 Am. Rep. 453; Magnin v. Dinsmore, 62 N. Y... 35, 20 Am. Rep. 442; Magnin v. Dinsmore, 70 N. Y. 410, 26 Am... Rep. 608.   Indeed, in every reported case where this identical form: of contract has been considered, it has been sustained as effective: to limit the liability of the company to the agreed valuation.   In· the recent case of Rowan v. Wells, Fargo & Co., 80 App. Div. 31, 80 N. Y. Supp. 226, it was even held that where the receipt issued by an express company provides that it shall not be liable "for an amount exceeding $50 on any shipment unless its true value is herein stated,"· and the value of the package was not given by the shipper, and, if it had been, an additional charge would have been made for its transportation, and special care would have been exercised for its safe-keeping, the express company is not liable in excess of $50, unless the shipper proves some affirmative act of wrongdoing on its part, and that proof of mere ordinary neglect is not sufficient."   Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608, as already shown, laid down the same rule; and so did Ghormley v. Dinsmore, 53 N. Y. Super. Ct. 36.

All the material facts in the case at bar having been agreed upon, the judgment appealed from should, for the reasons above stated, be modified by reducing the amount to $50, and, as so modified, affirmed, with costs of the appeal to the defendant; an offer of judgment for that amount having been duly filed.

Judgment modified by reducing amount to $50, and, as so modified, affirmed, with costs, to defendant.   All concur.