ODESSA F. HOWARD, Plaintiff, *v.* HANDLER BROS. & WINELL, INC., Defendant.

Supreme Court, Trial Term, New York County, April 2, 1951.

*Samuel Pressman* for plaintiff.

*John M. Aherne* and *John J. Martin* for defendant.

GOLD, J.   The complaint in this case sets forth two causes of action based on the same events, the first founded on a breach of contract by the defendant and the second on defendant's negligence.   The first cause of action was dismissed by the court and the second submitted to the jury, which returned a verdict for the plaintiff in the amount of $3,477.   The defendant has moved, pursuant to section 457-a of the Civil Practice Act, for a directed verdict in favor of the plaintiff in the amount of $10.

The cause of action which was submitted to the jury alleged that on or about May 12, 1949, the plaintiff delivered to the defendant for Hollanderizing and storage a mink coat and that the coat was lost or stolen as a result of the defendant's negligence and through no fault on her part.   The defendant admitted that it received the coat from the plaintiff for the alleged purposes on or about May 12, 1949, and that it was not returned to her when she called for it sometime in February, 1950.   The defendant was unable to explain the loss or the disappearance of the coat.   It insists, however, that by reason of provisions appearing on a paper, variously denominated thereon as " Fur Storage Agreement ", " Storage Contract ", and " Receipt ", which was delivered to the plaintiff at the time she left the coat with the defendant, the defendant's liability is limited to a sum not in excess of $10.   This paper, which is in evidence, measures approximately eight inches by ten inches and its face, by reason of its border and color, is suggestive of a stock certificate.   Over the name of the defendant, in the top portion of the face of the paper appears the legend " Fur Storage Agreement ".   On this paper there were written in by an employee of the defendant, in connection with printed words calling for such information, the plaintiff's name and address, the date, the description of her coat, the service desired by the plaintiff in addition to storage, i. e., Hollanderizing, the value, which appears as $1 and the defendant's charges, which amounted to $20.   There had also been placed on the face of the paper prior to its delivery to the plaintiff a rubber stamp containing the following statement: " Our Liability is limited to the sum of $10 unless a declared valuation is placed on the garment to be stored and an extra charge for insurance is made ".   On the face of the paper, just below the top border,

appears, though not conspicuously, the following statement: " This agreement is subject to and made a part of the contract noted on the reverse side ". The reverse side of this paper is headed " Conditions ", which word is in large capital letters and in bold type. Below this appears the following " NOTICE " also in bold, but considerably smaller type. " This receipt is your storage contract. By its acceptance you will be deemed to have noted and agreed to its terms as embracing all agreements between the parties with respect to storage ". Of the conditions printed on the reverse side, only those numbered 9 and 12 are of any relevance to the present motion. Condition 9 reads as follows: " At the request of the depositor and as part of the consideration for the charge set opposite each item herein listed, the undersigned hereby agrees to have effected for the benefit of the depositor insurance on each article listed in this receipt which shall, in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which shall represent respectively the limit of liability for loss of or damage to the same."

Condition 12 reads as follows: " Storage and insurance charges are based upon valuation herein declared by the depositor and amount recoverable for loss of or damage to the article shall not exceed its actual value or the cost of repair or replacement with materials of like kind and quality or the depositor's valuation appearing in this receipt, whichever one of those amounts is least."

The court instructed the jury that if the loss of the plaintiff's coat was due to the defendant's negligence, the defendant's liability to the plaintiff would not be limited to the sum of $10, as contended by the defendant, unless it found that the plaintiff had knowledge of the special provisions contained in the paper limiting the defendant's liability. The defendant, on this motion for a directed verdict in favor of the plaintiff limited to the sum of $10, insists that the court was in error in so instructing the jury and that as a matter of law, the plaintiff, by reason of her receipt of the above-described paper and her retention of it without objection, must be deemed to have consented to the various provisions contained therein, including those limiting the defendant's liability to not more than $10, regardless of whether the plaintiff knew of the provisions.

It seems reasonably plain that if the rule of the so-called " carrier " cases, on which the defendant mainly relies, is to be applied to the instant case, the provisions purporting to limit the defendant's liability are effective even though the

loss is due to the defendant's negligence and even though the plaintiff did not know of those provisions — provided, however, that those provisions are not to be treated on a par with provisions wholly exempting the defendant from liability for its negligence, a question which is hereinafter considered. (See *Boyle* v. *Bush Terminal R. R. Co.*, 210 N. Y. 389 [1914]; *D'Utassy* v. *Barrett*, 219 N. Y. 420 [1916], and *Reichman* v. *Compagnie Generale Transatlantique*, 290 N. Y. 344 [1943].) On the other hand, if the rule applied in the so-called "parcel and baggage check" cases, on which the plaintiff principally relies, is to be applied, the question whether the plaintiff knew of the provisions on which the defendant bases its motion is one properly to be determined by the jury as a question of fact (see *Klar* v. *H. & M. Parcel Room*, 270 App. Div. 538 [1st Dept., 1946], affd. 296 N. Y. 1044), for unless she knew or at least should have known of those provisions, there was no meeting of the minds with respect to this phase of the transaction between the plaintiff and the defendant, in which event it may not be said that the plaintiff consented to the provisions purporting so to limit the defendant's liability.

In the only comparable "storage" case to which the court's attention has been called, the City Court of New York reluctantly applied the rule of the "carrier" cases, but without any discussion as to the necessity for doing so. (*Rapp* v. *Washington Stor. Warehouse & Van Co.*, 75 Misc. 16 [1911].) On the other hand, in *Corrao* v. *Dewey Garage Corp.* (24 N. Y. S. 2d 592 [Sup. Ct., Kings Co., 1940]), which was an action for conversion of a part of the contents of the plaintiff's truck stored in the defendant's garage, which an employee of the defendant had negligently delivered to a stranger, the court held that the printed notice on the defendant's bills relative to loss was to be read with the understanding that negligence did not cause the loss.

In passing on this motion, the court notes that the rule of the "carrier" cases has had a tortuous history in this State and did not crystallize until fairly modern times. (See *Boyle* v. *Bush Terminal R. R. Co.*, *supra*, and *Magnin* v. *Dinsmore*, 56 N. Y. 168 [1874], 62 N. Y. 35 [1875], 70 N. Y. 410 [1877]; also the vigorous dissent of Judge HAIGHT in *Tewes* v. *North German Lloyd S. S. Co.*, 186 N. Y. 151, 161 [1906].)

While the "parcel and baggage check" cases have been distinguished from the "carrier" cases on the ground that the transactions involved in the former are "hurried", while those in the latter are more "deliberate" (see *Healy* v. *New York*

*Central & H. R. R. R. Co.*, 153 App. Div. 516 [3d Dept., 1912], and *Addoms* v. *Weir,* 56 Misc. 487, [App. Term, 1st Dept., 1907]), the basic question in all the cases has been whether in view of all the circumstances, it should be determined by the court *as a matter of law* that the plaintiff had agreed to the limitation of liability relied on by the defendant. (See *Bernstein* v. *Weir,* 40 Misc. 635 [App. Term, 1st Dept., 1903].)

In *Kirkland* v. *Dinsmore* (62 N. Y. 171, 179 [1875]), a case in which the so-called "carrier" rule was applied, the Court of Appeals quoted the following from its opinion in *Blossom* v. *Dodd* (43 N. Y. 264 [1870], a "baggage check" case): "'As to bills of lading and other commercial instruments, it has been held that persons receiving them are presumed to know from their uniform character, and the nature of the business, that they contain the terms upon which the property is to be carried.'"

In *D'Utassy* v. *Barrett* (219 N. Y. 420, *supra*), a leading case in this State, the court stated (p. 425): "The reason for the rule sustaining the declared and agreed valuation is to prevent fraudulent practices by shippers in obtaining a lower rate by undervaluation."

The court also stated (p. 426) that to hold otherwise would be to disregard "the intent * * * of the acts of Congress regulating interstate transportation".

A failure to apply the provisions on which the defendant relies would involve no disregard of any statutes and there is nothing in the evidence to indicate that it is necessary to apply the rule of the "carrier" cases to the situation *sub judice* in order to prevent fraudulent practices designed to obtain a lower rate by undervaluation. The evidence shows that the defendant was aware of the great value of the coat committed to its care. Nor is there any evidence in this case that it is a uniform and long-established practice of persons engaged in the storage of fur coats to stipulate for a limitation of their liability, even where they are negligent, to a nominal sum unless a higher valuation is declared, and that such practice is well known to the public. The jury's verdict must be taken as representing their unanimous judgment that the plaintiff, characterized by the defendant as an intelligent woman, did not know of the purported limitation. On what, on the present record, it regards as essentially a question of fact, the court is reluctant to substitute its judgment for that of the jurors who, in their deliberations, have had the benefit of their diverse experiences and backgrounds, or to rule as a matter of law

that, regardless of what may be the actual fact, the plaintiff must be deemed to have known of the limitation.

It is moreover to be noted that of the total charge of $20 made by the defendant in the transaction under consideration, $3 represented the cost of storage, handling and insurance and that the latter amount was sufficient to provide insurance in the amount of $150. Thus, neither the $1 valuation nor the $10 limit bears any relation either to the known value of the coat or to the charge made by the defendant. The very crux of the " carrier " cases on which the defendant places its reliance was that the charge was based on the valuation.

Furthermore, the court is of the opinion that in view of the known value of the coat, the limitation on which the defendant relies is more akin to a provision exempting it from all liability for its negligence than to a provision merely placing a limit upon its liability. This would hardly be debatable if the limit had been set at one penny and the court believes it equally true of the limitation under consideration.

For these reasons, the defendant's motion for a directed verdict under section 457-a of the Civil Practice Act is denied.