ODESSA F. HOWARD, Respondent, v. HANDLER BROS. & WINELL, INC., Appellant.

First Department, November 7, 1951.

*John M. Aherne* of counsel (*John J. Martin* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellant.

*Samuel D. Pressman* for respondent.

PECK, P. J.  Defendant appeals from plaintiff's judgment for the value of a mink coat left with defendant for storage and cleaning.  The coat was not returned and defendant could not account for the loss.  Negligence was conceded.

The defense rests entirely upon a document which defendant claims was a binding contract between the parties limiting defendant's liability to the sum of $10. This document, which is sufficiently impressive in appearance, resembling a stock certificate, is labeled " Fur Storage Agreement ". It recites on its face that a mink coat was received from plaintiff at a stated value of $1, for storage and work involving charges of $20. A legend is stamped on the face of the document stating: " Our Liability is limited to the sum of $10 unless a declared valuation is placed on the garment to be stored and an extra charge for insurance is made."

Also on the face of the document at the top, but not in large type, is a statement: " THIS AGREEMENT IS SUBJECT TO AND MADE A PART OF THE CONTRACT NOTED ON THE REVERSE SIDE." On the reverse side, under the heading " CONDITIONS ", and a " NOTICE " that " This receipt is your storage contract. By its acceptance you will be deemed to have noted and agreed to its terms as embracing all agreements between the parties with respect to storage " are fourteen specified conditions in small type. Among the conditions are the following:

" 9. At the request of the depositor and as part of the consideration for the charge set opposite each item herein listed, the undersigned hereby agrees to have effected for the benefit of the depositor insurance on each article listed in this receipt which shall, in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which shall represent respectively the limit of liability for loss of or damage to the same. * * *

" 12. Storage and insurance charges are based upon valuation herein declared by the depositor and amount recoverable for loss of or damage to the article shall not exceed its actual value or the cost of repair or replacement with materials of like kind and quality or the depositor's valuation appearing in this receipt, whichever one of those amounts is least."

Plaintiff testified that she regarded this document as merely a receipt, and although she saw that a valuation of $1 was written into the document, she did not read the document, regard it as a contract, or know the purported limitations of liability contained therein. On that factual issue, which was left to the jury, a finding was evidently made in plaintiff's favor.

Defendant contends that such a finding was against the evidence, and overall contends that the fur storage agreement was binding on plaintiff whether she chose to read it or not,

The legal discussion before us has related principally to the question of whether the rule in the " parcel and baggage check " cases or the rule in the " carrier " cases should apply in this situation. It has been held that the patron of baggage check facilities is not bound by the provisions of limited liability crowded on to a baggage check, unless the provisions have been brought to his attention (*Klar* v. *H. & M. Parcel Room, Inc.,* 270 App. Div. 538). On the other hand, it has been held in cases of bills of lading that limitations of liability are binding regardless of actual knowledge because of the presumed knowledge of the uniform practice of carriers in this regard (*Kirkland* v. *Dinsmore,* 62 N. Y. 171).

We do not feel required to make that choice or even consider whether plaintiff's claim of lack of knowledge of the details of the document is supportable in the evidence. For the purposes of our decision, we will assume the document to be a valid agreement according to its terms. The terms must be strictly construed, however, and most strongly against defendant, it being defendant's draftsmanship paring down the ordinary rights of its customers.

Plaintiff delivered to defendant, from whom she bought it, a very valuable coat for safekeeping and treatment. Defendant was certainly obliged to exercise the care which its held-out expertness and the value of plaintiff's property would call for. That it failed to do so is obvious, and it merely offers plaintiff $10 in return without attempting to account for the loss of her coat. Whether the coat was misdelivered, converted, stolen by an outsider or an insider, is not indicated, nor is any attempt at explanation made.

Defendant simply relies upon its fur storage agreement and contends that the only answer it is required to make is a tender of $10 for a $3,500 coat. It could just as well, under the terms of the agreement, have insisted upon a limitation of $1. The offhandedness with which that valuation was placed on the coat is illustrated by the fact that the storage charge would have covered insurance in the amount of $150. Admittedly only a nominal value was placed on the coat for the purpose of placing the entire burden of any loss upon plaintiff and exculpating defendant from liability.

We will not extend our consideration of the case beyond the question of whether defendant succeeded by its draftsmanship in effecting the exculpation which it claims. The law does not look with favor upon attempts to avoid liability for one's own fault, and although it is permissible in instances to contract

one's self out of liability for negligence, such a result is not to be countenanced unless it is absolutely **clear** that such was the understanding. It must be precisely provided that limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility.

Reading the document in question with this view, what do we find? Certainly no mention of negligence or fault or clear indication that defendant is attempting to exempt itself from the consequences of its own fault. The sense of all the conditions in the agreement relating to limited liability is that insurance is made available to the depositor to cover specified kinds of loss, and unless an extra payment is made for additional insurance, the amount of the insurance and liability will be limited to the declared value of the property. Insurance and limitation of liability are made to appear dependent and coextensive. We must, therefore, regard the kinds of loss which are insured against, according to the representations of the agreement, and strictly confine the limitation of liability to such losses. The only loss which appears to be insured or insurable, according to the wording of the conditions of the agreement, is loss by fire or theft. Limitation of defendant's liability should accordingly be confined to loss by fire or theft.

Every reference to insurance in the " CONDITIONS " of the agreement is coupled with " fire or theft ", and every reference to limited liability is coupled with a reference to insurance. In condition " 3 ", for example, it is provided that " In event of loss or damage, total or partial, from fire or theft, all storage charges as set forth herein shall be deducted by the undersigned from any sums collected representing insurance effected for the benefit of the depositor. " In condition " 9 ", fully quoted above, the insurance which defendant undertakes to effect for the benefit of the depositor is " against loss by fire and theft " for the value set opposite the article, which is made to represent the limit of liability for loss of the garment. And in condition " 12 ", the other condition relied on by defendant, also fully quoted above, it is stated that insurance charges are based upon the valuation declared by the depositor, which is made the amount recoverable for loss of the article.

We think, therefore, that anyone reading the agreement with the care which defendant attributes to plaintiff would believe, or at least be justified in believing, that defendant's liability was limited only in respect to losses which were insured, to wit, loss by fire or theft.

For misdelivery, for example, there is no suggestion of insurance or limited liability. On the contrary, defendant took pains in condition "6" to disclaim any liability for loss when delivery is made to any person presenting the receipt, or to a common carrier, or to the depositor's address. Quite clearly, therefore, all loss is not insured, and loss by misdelivery not excepted would be with full liability. Other kinds of loss similarly not insured can be imagined.

Taking the conditions altogether, therefore, they constitute specified limitations of liability, including loss by fire or theft, but they do not add up to a general limitation of liability for loss or negligence. At least the claimed limitation of liability is not made so clear as to justify the court invoking it against the customer in favor of the defendant who drafted the instrument.

There is no question of fire in this case and defendant has not shown or even alleged theft. It simply acknowledges a loss for which it cannot account. It has thus failed to bring itself within any clear provision of the agreement for limited liability, and must bear its ordinary responsibility for negligence.

The judgment should be affirmed, with costs.

DORE, J. (dissenting). On the state of facts here presented, the rule in *Klar* v. *H. & M. Parcel Room Inc.*, (270 App. Div. 538, affd. 296 N. Y. 1044), is not applicable. Plaintiff's Exhibit 2 is not a mere parcel check delivered in what the majority of this court called a rather hurried transaction but is plainly contractual on its face and was filled-in in the presence of the bailor and delivered to her with plaintiff's name and address plainly written on it; plaintiff accepted it and placed it among her valuable papers and kept it for months; the transaction resulting in its execution and delivery took about a half an hour. The limitation of liability clause was plainly stamped on the face of the document. Plaintiff admits that she saw the valuation of $1, that it was called to her attention and that she read all the handwriting on Exhibit 2.

Acceptance and retention of a contractual document such as this without objection over a period of many months established consent on plaintiff's part (*Reichman* v. *Compagnie Generale Transatlantique*, 290 N. Y. 344). Plaintiff's first cause of action is in contract and she annexed the document to her bill of particulars. Defendant's charges afforded a choice of rates and if plaintiff had declared a value of $3,477 on the garment in question, she would have been compelled to pay a

greatly increased charge. By accepting the contract in its present form, she got a lower rate and deprived defendant of the opportunity to insure the garment for full value now claimed.

If this judgment stands, it will practically be impossible for ordinary bailees for hire to regulate such transactions with customers and limit their liability in cases in which the customers prefer, for their own then present advantage, to place a nominal valuation on the goods when bailed; and after loss occurs, then, for their own now present advantage, claim full value.

Plainly stamped on the face of the contract is the statement that liability is limited to $10 unless a declared valuation is placed on the garment and an extra charge for insurance is made. By its terms, that plain clause is not limited to liability for "fire or theft" but is a general limitation. Paragraph 12 of the conditions also refers to "loss of or damage to the article" without indicating that the loss is limited to fire or theft and provides that it shall not exceed the depositor's valuation if that, as here, is the least of the specified valuations. Similarly, paragraph 13 refers to "loss or damage" without qualification. Accordingly, I think it may not be said that the document is restricted to loss only by fire or theft.

Accordingly, I dissent and vote to reverse the judgment and order appealed from and to direct judgment in defendant's favor.

COHN, VAN VOORHIS and SHIENTAG JJ., concur with PECK, P. J.; DORE, J., dissents and votes to reverse the judgment and order and to direct judgment in defendant's favor in opinion.

Judgment and order affirmed, with costs to the respondent.