GERTRUDE ZAYENDA, Plaintiff, *v.* SPAIN & SPAIN, LTD., et al.,
Defendants.

Supreme Court, Trial Term, New York County, December 31, 1951.

*Joseph Haskell* for plaintiff.

*Henry E. Otto* and *Henry E. Otto, Jr.,* for defendants.

HOFSTADTER, J.  The plaintiff in May, 1950, delivered to the defendant Spain & Spain, Ltd., a furrier (to be referred to as Spain), for storage her ranch mink coat which she had purchased the preceding October for $3,500.  A few days after such delivery the defendant sent the plaintiff its " Storage Receipt and Agreement " for this coat and another item.  On the face of this paper, the article is described as " Ranch Mink Coat ", with the figure " 250 " in the column headed " Depositor's Valuation."  The document states that the articles listed are received " subject to conditions printed on reverse side of this receipt which are made a part hereof."

The following are the provisions on the reverse side here material:

9. At the request of the depositor and as part of the consideration for the charge set opposite each item listed on the other side, the undersigned hereby agrees to have effected for the benefit of the depositor insurance on each article listed in this receipt which shall, in terms usual to such insurance, cover against loss by fire and theft for the value set opposite each item, which shall represent respectively the limit of liability for loss of or damage to the same.  *  *  *

12.  *  *  *  Storage charges are based upon valuation herein declared by the depositor and amount recoverable for loss of or damage to the article shall not exceed its actual value or the cost of repair or replacement with materials of like kind and quality or the depositor's valuation appearing in this receipt, whichever one of these amounts is least.

The value of $250 was placed on the coat with the plaintiff's complete knowledge and approval.  She knew the storage receipt issued by Spain contained this value limitation and unquestionably the receipt and agreement constituted a valid contract by which the plaintiff was bound.  In view of this finding on the evidence before me the question whether generally such a fur storage receipt should or should not be treated as a valid agreement between the parties need not be considered.  (See *Howard* v. *Handler Bros. & Winell,* 279 App. Div. 72.)

On November 22, 1950, some one representing himself as Lester Goodwin of the Columbia Broadcasting System (C. B. S.) by telephone requested Spain to loan C. B. S. a mink coat to be kinescoped and shown on the Faye Emerson program. Spain, believing that the plaintiff's ranch mink coat would be suitable for this purpose, thereupon called up the plaintiff, who consented to the use of her coat for such display. When a program is kinescoped it is taken on a film which permits later showing in other parts of the country, as well as in New York. In a second telephone call soon after his first Goodwin asked Spain whether, in view of the fact that the time of the kinescope had been advanced, he might send down for the coat. Spain assented to this arrangement and left instructions for the delivery of the coat. Later on a messenger presented himself at Spain's establishment, to whom one of Spain's employees delivered the plaintiff's coat. The messenger signed a receipt and Spain's employee gave testimony, which I credit, that the signature on the receipt corresponded with that on a card presented by him, reading " C. B. S. Messenger Service." That was the last of the plaintiff's coat, which was never returned either to Spain or the plaintiff.

It is clear, beyond question, that Spain was the victim of a skillfully designed fraud. No request for a mink coat had emanated from C. B. S. and it was all a hoax. Nevertheless, Spain manifestly did not act with reasonable care in turning over this valuable mink coat to an utter stranger. The transaction was handled from beginning to end over the telephone with an unknown person. Spain obtained not even telephone, much less written, confirmation from C. B. S. of the supposed request for a mink coat needed for the Faye Emerson program. In the circumstances, it must be held that Spain was negligent in not verifying the source of the request and Spain thus failed to discharge its duty as bailee.

But for the limited value provision of the storage agreement, judgment against Spain for the full value of the coat would necessarily follow. Though the effect to be given to this provision offers difficulty, in my opinion, it cannot be invoked by Spain in the circumstances here shown.

The evidence establishes that the contemplated showing of the coat on television was entirely in Spain's interest. Spain had on other occasions furnished studios with coats for similar purpose, and Spain's name was then used in connection with the display. The hoped-for television was, therefore, an advertising medium for Spain. Had Spain given the plaintiff's coat

to a television producer, without her permission, Spain would, of course, be guilty of conversion. This would be a complete departure from the terms and purpose of the bailment. (*Engels* v. *Neuhoff Furs,* 276 App. Div. 599.)

I do not think the plaintiff's consent changes the result here. It is unnecessary to hold that her consent was operative only in the case of actual delivery of her coat to C. B. S., though much could be said in favor of this view. It is sufficient to rule that her consent was conditioned on the exercise by Spain of reasonable diligence to see that the coat reached C. B. S. This much, at least, was implicit in the consent and I so hold. The finding already made of Spain's negligence in this respect deprives Spain of any right which it might otherwise have to rely on the consent. The case must, therefore, be treated as though Spain had, without the plaintiff's consent, devoted her property to a use wholly foreign to the purpose of the bailment.

Does the value limitation apply in such a situation? I do not think the answer to this question should depend on whether the bailee's misconduct is called a conversion or a breach of the contract of bailment. The substance, not the name, should determine the legal effect of his act. The measure of damages is the same in either form of action (*Markoe* v. *Tiffany & Co.,* 26 App. Div. 95, affd. 163 N. Y. 565).

Obviously, the limitation is to be read strictly and most strongly against the bailee who drew it. (*Howard* v. *Handler Bros. & Winell,* 279 App. Div. 72, 75, *supra.*) The present agreement is substantially identical with the one interpreted by the Appellate Division in the *Howard* case. It was held in the *Howard* case, upon an analysis of the various clauses, that the provision for insurance and the limited valuation are " dependent and coextensive." (P. 76.) So construed, the limitation applies only to a loss by fire or theft, and does not extend to one due to misdelivery or negligence. Even were it assumed, in Spain's favor, that the deceit practiced on Spain was a theft, the theft was not one committed without contributing fault on Spain's part. Had Spain exercised due care, the plaintiff's coat would never have been surrendered to the imposter. Thus, as the court said in the *Howard* case (*supra,* p. 77), Spain " has * * * failed to bring itself within any clear provision of the agreement for limited liability, and must bear its ordinary responsibility for negligence." There was a departure from the terms of the bailment, a misdelivery, brought about by the bailee's negligence. Spain is, therefore, liable for the value of the coat. What was said in the course of the

opinion in *Ætna Cas. & Sur. Co.* v. *Higbee Co.* (80 Ohio App. 437) gives the plaintiff's position some support, though the court seems to have stressed unduly the conversion aspect of the case.

The coat cost $3,500 when bought in October, 1949. The plaintiff had worn it throughout the winter of 1949–1950. Though it was in good condition when placed in storage, I cannot accept the plaintiff's contention that it was worth as much as when new. I think on the date of its disappearance the cost was worth $3,000 and I accordingly direct judgment for the plaintiff against the defendant Spain & Spain, Inc., for $3,000, with interest from November 22, 1950.

The plaintiff also demands judgment against the defendant New Hampshire Fire Insurance Company, which issued to Spain a "Furriers' Customers Basic Policy." The plaintiff relies on the "Excess Legal Liability Endorsement" which, in substance, binds the insurer to pay all sums which the insured bailee becomes obligated to pay by reason of liability imposed by law for loss or damage to property for which the insured has issued a receipt, but "only to the amount of such liability in excess of the valuation entered in said receipt." Spain, the bailee, not the plaintiff, is the insured under this policy. In my opinion, the authorities permitting a bailor to recover on a bailee's policy (*Exton & Co.* v. *Home Fire & Marine Ins. Co.,* 249 N. Y. 258; *Utica Canning Co.* v. *Home Ins. Co.,* 132 App. Div. 420) do not apply here. The excess liability indorsement is not drawn for the plaintiff's benefit, but in hostility to his claim. Its purpose is to protect the insured bailee who, as here, is held liable for more than the amount stated in the receipt. It is to cover the contingency in which for some reason the limit in the receipt is overridden. It would be incongruous to treat the plaintiff bailor as the beneficiary of such a policy. The complaint against the defendant insurance company is dismissed.

The plaintiff's motion to strike out the evidence of Spain's telephone talks with the person purporting to be Lester Goodwin is denied, with exception to the plaintiff.

The foregoing constitutes the decision in the case. Enter judgment accordingly.