JEANETTE ABEND, Respondent, *v.* HARRY HABERMAN, Doing Business under the Name of HABERMAN IMPORTERS, Appellant.

Supreme Court, Appellate Term, First Department, May 15, 1952.

*Clendon H. Lee* for appellant.

*Charles T. Weintraub* for respondent.

HOFSTADTER, J.   On June 1, 1948, the plaintiff placed in storage with the defendant a Persian lamb coat and a Persian lamb hat, which she had bought from the defendant the preceding December for $1,564.   A few days later the defendant sent the plaintiff by mail a printed receipt in which the articles were valued at $100.   The following provisions of the receipt are material to the present issue:

We shall keep said property insured against all direct loss or damage by fire, and in case of such loss or damage we will either pay the amount allowed by the Insurance Company or Companies to compensate such loss or damage; or we may, if we so elect, retain said property or any article thereof and pay the amount of the owner's valuation, or replace same with others of like kind and quality, whether such loss or damage results by fire, moths, or other causes, for which we may be responsible.

When furs placed with us for storage are undervalued, such transactions are at owner's risk, and in any event the owner's valuation hereon is the limit of our liability.

At the very foot of the paper appears this:

NOTE — Any objections to values or terms herein stated must be made within 10 days, otherwise same are to be taken as agreed to.

Shortly before November 1, 1948, the plaintiff instructed the defendant to deliver the articles in question to her husband at 237 Lafayette Street.   They were accordingly given to the

defendant's messenger with appropriate instructions. Instead of delivering the items to the plaintiff's husband, the messenger surrendered them to a clever thief who evidently had followed the messenger and picked up an acquaintance with him as they were leaving the Canal Street station of the subway together. This stranger represented himself as the person who was to get the package and told the messenger a none too plausible story which, nevertheless, induced him to give up the furs to the impostor. There is no claim that the messenger himself was dishonest. Nevertheless, the messenger was unquestionably careless in succumbing to the wiles of this thief, and for his employee's negligence the defendant, as bailee, is liable. The only question is whether his liability is limited to $100, the value declared in the receipt, or whether he is liable for $1,564, the full established value.

The evidence of the plaintiff's assent to the value limitation rests more on the defendant's reliance on his customary practice than on his recollection of this particular transaction. However, the plaintiff's retention of the receipt without objection and the absence of any testimony at all by the plaintiff, disclaiming either assent or knowledge, are sufficient to bind her contractually to the terms of the receipt (*Lumberman's Ins. Co. of Philadelphia* v. *Russek's Fifth Ave.*, 264 App. Div. 763, affg. Appellate Term; *Berkenfeld* v. *Chelsea Fireproof Stor. Warehouses*, 258 App. Div. 1039, affg. Appellate Term). In *Howard* v. *Handler Bros. & Winell* (200 Misc. 600) the jury had found for the plaintiff on the issue of lack of knowledge of the special provisions of the receipt. In affirming, the Appellate Division (279 App. Div. 72) did not pass on this question, but disposed of the case on the assumption that the receipt was a valid agreement.

The receipt here bears a superficial similarity to those dealt with in *Howard* v. *Handler Bros. & Winell* (279 App. Div. 72, *supra,* affd. 303 N. Y. 900) and *Zayenda* v. *Spain & Spain* (201 Misc. 963). In the *Howard* case the court held the value limitation to be " dependent and coextensive " with the clauses providing for insurance. (279 App. Div. 76.) In the *Zayenda* case the receipt was substantially the same as that in the *Howard* case and the loss occurred while the coat was being used for a purpose foreign to the original scope of the bailment and wholly in the interest of the bailee. Here the loss occurred through negligence, it is true, but still negligence while the defendant was engaged in good faith in attempting to return the furs to the plaintiff.

In my opinion, the sentence dealing with valuation goes much further than the receipt construed in the *Howard* and *Zayenda* cases. In the first place, this clause is not tied in with the insurance provisions. It is in a separate paragraph by itself. It says that when furs are undervalued, the transactions are " at owner's risk " and " in any event, the owner's valuation hereon is the limit of our liability." This is, it seems to me, an unequivocal value limitation which fixes the value for the purposes of the bailment transaction. The return of the furs was an incident of the transaction. Unless this clause is given effect as a value limitation applicable to the occurrence before us, it is completely nullified. Such agreed valuations are upheld (*D'Utassy* v. *Barrett,* 219 N. Y. 420; *Boyle* v. *Bush Terminal R. R. Co.,* 210 N. Y. 389).

The judgment is accordingly modified by reducing the recovery to $100, with costs, and as modified affirmed, with $25 costs to the appellant.

EDER, J. (dissenting). I vote to affirm the judgment appealed from. I do not see that there is any limitation of liability upon which the defendant can successfully rely. There were two receipts given by defendant to the plaintiff. Plaintiff's Exhibit 1, though it is dated June 1, 1948 was, in fact, *not* issued that day but several days *after* the coat had already been delivered to the defendant. The defendant so testified:

" Q. As a matter of fact, Mr. Haberman, you did not issue that receipt until after you picked up the coat? A. Yes."

At the time the coat was delivered by plaintiff to the defendant, a receipt was given by defendant to plaintiff.

" *Plaintiff's Counsel:* I wish to offer in evidence at this time the receipt issued at the time the coat was picked up, referred to in the examination as plaintiff's exhibit 2 for identification.

" *Defendant's Counsel:* No objection. (Receipt admitted in evidence, marked Plaintiff's Exhibit 2.) "

There is no limitation of liability under plaintiff's Exhibit 2, which is the receipt actually issued to the plaintiff by defendant *at the time of the delivery* of the coat to him. This is the one to control.

Moreover, even under plaintiff's Exhibit 1, the receipt of June 1, 1948, there is no limitation of liability for loss or damage occasioned by negligence of defendant, or conversion.

In the situation disclosed by the record, I am unable to concur in a conclusion that the receipt, plaintiff's Exhibit 2, given at the

time of the delivery of the coat to defendant, should be ignored. It is founded on a good consideration and should be given full faith and effect.

I accordingly vote to affirm the judgment in the sum rendered.

HAMMER, J., concurs with HOFSTADTER, J.; EDER, J., dissents in memorandum.

Judgment accordingly.