Jose **GOLDBAUM**, Plaintiff,

v.

**BANK LEUMI TRUST COMPANY OF NEW YORK**, Defendant.

**No. 80 Civ. 6294 (KTD).**

United States District Court, S. D. New York.

Aug. 18, 1982.

Opert & Herisko, Cambridge, Mass., for plaintiff; Lawrence R. Opert, Cambridge, of counsel.

Gottesman, Wolgel, Smith & Secunda, New York City, for defendant; Harold H. Wolgel, Lawrence L. Flynn, New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

In this diversity action plaintiff Jose Goldbaum, a citizen and resident of Chile, seeks to recover for water damage to certain of his rare medals and coins stored in two safety deposit boxes at a branch of defendant Bank Leumi Trust Company ("Bank Leumi"), a New York banking corporation. The complaint alleges two causes of action: one for breach of the bank's alleged warranty to maintain the boxes safely, and another for damage caused by defendant's negligence. Plaintiff seeks $100,000 in compensatory damages on each cause of action.

A two day nonjury trial was held before me on July 26, 1982. The trial commenced three days after I denied a belated motion by the defendant for summary judgment. My denial of the motion was the subject of a memorandum and order dated July 23, 1982, familiarity with which is assumed. The following shall constitute my findings of fact and conclusions of law.

I.

Goldbaum has had an interest in rare coins and medals since he was a child. He has been a numismatist for the past thirty-one years, concentrating in Chilean and other South American coins and medallions. He collects silver, bronze and copper coins and medals, and today his entire collection consists of approximately 2,500 pieces (1,600 coins and 900 medals). In 1973, Goldbaum arranged through Samuel Rosovsky, his cousin, life-long friend and a resident of New York City, to have a large box-full of approximately 900 of his rare medals and 100 of his coins deposited in a safety deposit box at the Bank Leumi. This arrangement was prompted by the tumultuous political climate in Chile in 1973 and Goldbaum's desire to place these valuable pieces in a more stable country. Goldbaum, who is Jewish, specifically chose Bank Leumi as a depository because of its relationship with Israel. In June, 1973, Rosovsky went to the Fifth Avenue branch of Bank Leumi and signed on plaintiff's behalf two contracts for the lease of two safety deposit boxes. The rental charge for the boxes was paid by the plaintiff out of an account he maintained at the bank. Both Rosovsky and the plaintiff kept copies of keys to the boxes.

The coins and medals brought to the bank were wrapped in either of three different ways: first, there were three green cardboard velvet lined display boxes that contained separate fittings; second, many coins and medals were in individual plastic folders; and third, the remaining coins and medals were individually wrapped with special paper.

On February 13, 1979, the sprinkler system at the Fifth Avenue branch malfunctioned and flooded the two safety deposit boxes containing plaintiff's coins and medals. The next day the bank called Rosovsky and asked him to come down to the bank to inspect the plaintiff's boxes. Rosovsky went to the bank on February 15th and discovered that a substantial amount of water was in the boxes, that most of the wrappings were destroyed and that most of the coins and medals were wet. The coins in plastic wrappers were untouched by the water but about 90 percent of the plastic wrappings had to be discarded.

The bank manager and several bank employees helped Rosovsky dry the coins and medals one by one. When all the coins and medals were dry, some four hours later, Rosovsky placed them in three new safety deposit boxes, one of which was provided by the bank free of charge after Rosovsky was unable to fit the pieces in two new boxes provided by the bank.

II.

■ Plaintiff argues that the foregoing evidence establishes the defendant's liability. As explained in my July 23, 1982 memorandum and order, the parameters of the bank's liability are defined by its bailor-bailee relationship with Goldbaum. *See Sagendorph v. First National Bank of Philmont*, 218 App.Div. 285, 218 N.Y.S. 191 (3d Dep't 1926); Williston on Contracts § 1045,

pp. 958–60 (3d ed. 1967). Bank Leumi is responsible to the plaintiff for any negligent loss or damage to the contents of the safety deposit boxes unless the parties agreed upon an alternative standard of liability. *See Consolidated Launderies Corp. v. Regis Operators, Inc.*, 26 A.D.2d 383, 274 N.Y.S.2d 815 (3d Dep't 1966); *Klar v. H. & M. Parcel Room*, 270 App.Div. 538, 61 N.Y. S.2d 285 (1st Dep't 1946), *aff'd*, 296 N.Y. 1044, 73 N.E.2d 912 (1947). By presenting evidence that the items given over to the bailee were returned in a damaged condition, plaintiff has established a *prima facie* case of Bank Leumi's negligence. *See Singer Co. v. Stott & Davis Motor Exp., Inc.*, 79 A.D.2d 227, 436 N.Y.S.2d 508 (4th Dep't 1981).

The bank raises two arguments challenging its liability for the flooding. First, the lease agreements between Goldbaum and Bank Leumi stated that the bank "shall have no liability or loss [sic] from fire, water, radiation, the forces of nature, . . . . [etc.]." Defendant urges that since the plaintiff's coins and medallions were damaged by water from the bank's sprinkler system the lease agreements expressly exclude liability. For the reasons stated in my memorandum and order dated July 23, 1982, this argument is without merit. New York courts will honor the terms and conditions of bailment agreements developed by the parties. Nevertheless, contracts which exclude liability for damage due to factors beyond man's control will not exclude a defendant from liability for his negligent failure to avoid damage. Defendant argued at trial that this rule did not apply here because the lease agreement's reference to "water" excluded natural sources, such as rainstorms and floods; these sources were covered by "the forces of nature" clause in the same sentence of the contract. Defendant submits that the term "water" in the agreement covers only man-made sources of "water," including the sprinkler system which damaged plaintiff's possessions.

I do not accept the bank's interpretation of these clauses which is corroborated solely by its counsel's argument. A close look at the pertinent language in the lease agreement reveals some ambiguity, and the inclusion of "force of nature" and "water" in the same sentence does not necessarily render their meanings mutually exclusive. Water can come from rainstorms or fire hoses. Fire can spring from a stricken match or a bolt of lightening. By listing "fire, water" next to "forces of nature" in its contract, the bank cannot disavow the reasonable interpretation that "fire, water" refer *also* to natural sources. An equally viable interpretation is that "forces of nature" was added to the clause to exculpate the bank from liability for damages caused by "forces of nature" other than fire and water, such as earthquakes and tornadoes. In other words, it does not follow as defendant suggests that the "fire" and "water" clause only applies to man-made sources.

New York courts have not construed ambiguous agreements to exclude liability for a bailee's own negligence, especially where, as here, the bailee drafted the inexplicit language. *See, e.g., Zayenda v. Spain & Spain, Ltd.*, 201 Misc. 963, 109 N.Y.S.2d 87, *aff'd*, 280 App.Div. 752, 113 N.Y.S.2d 115 (1st Dep't 1952). Accordingly, I do not find that the defendant has demonstrated that the lease agreement excludes any liability for all types of water damage for which defendant's negligence may have been responsible. If the defendant wished to prevent its liability for damage caused by a faulty sprinkler system then it should have been more explicit in the lease agreement.

The next defense raised at trial is that plaintiff's coins and medals are not "jewelry" within the meaning of the lease agreement. The agreement stated that Goldbaum was only to keep "securities, jewelry and valuable papers in the security deposit boxes," and "that the duty of the Lessor with respect to any such securities, jewelry and valuable papers is limited to the exercise of reasonable care in preventing access to the box by unauthorized persons, and that under no circumstances shall the Lessor be liable for the loss or destruction of any other property, including money, al-

leged to have been placed in the box." Paragraph 4 of Lease Agreement. In denying defendant's motion for summary judgment, I explained that "[i]f plaintiff can prove at trial that his coins fall within the meaning of the term 'jewelry' in the lease agreement and that the bank failed to deliver this property in an undamaged condition upon demand, then the burden of production of proof would shift from bailor to bailee to establish bailee's non-negligence." Slip. op. at p.8. Plaintiff has presented evidence of delivery in a damaged condition. Defendant concedes damage to plaintiff's property but argues that the coins and medals were money and not "jewelry" therefore absolving the bank of liability.

■ I find that the plaintiff has proven that his coins and medals were "jewelry" within the meaning of the contract. A "jewel" is defined in The Random House Dictionary (Revised Edition) as

1. a cut and polished precious stone; gem.

2. a fashioned ornament for personal adornment, esp. of a precious metal set with gems.

3. a precious possession . . . .

The plaintiff, a numismatist for over thirty years, testified that medals are "commemorative collector's items or art specimens" and coins are generally "currency." A medal easily fits within the definition of "jewelry" as "a precious possession." The medals which plaintiff stored in the safety deposit boxes were pieces from South American countries commemorating various historical events. Although they may not have been used for personal adornment, they were unquestionably precious possessions.

■ Similarly, plaintiff's coins were precious possessions. Despite defendant's protestations to the contrary, coins which at one time were used as currency are not necessarily restricted to that status forever. As I suggested to counsel at trial, if a nickel was mistakenly minted portraying an Indian with its thumb up to its nose it would have a value greater than five one hundreths of a dollar. It would be more than mere "money" as defined in the lease agreement. I interpret the parties' agreement to prohibit use of the safety deposit boxes for coins that are currently circulating mediums of exchange and have no value over and above their face value. The agreement does not, however, exclude precious possessions, including coins that have value greater than their face value. *Cf. California Federal Life Ins. Co. v. Comm'r. of Internal Revenue*, 680 F.2d 85 (9th Cir. 1982) (gold coins are not "money" within the meaning of the Tax Code); *Joslin v. United States*, 666 F.2d 1306 (10th Cir. 1981) (per curiam) (silver dollars received for legal services are taxed at fair market value); *In re Midas Coin Co.*, 264 F.Supp. 193 (E.D.Mo.1967), *aff'd sub nom. Zuke v. St. John's Community Bank*, 387 F.2d 118 (8th Cir. 1968) (valuable coins were "goods" under U.C.C.).

■ Defendant's argument that the agreement precluded storing these pieces in the safety deposit boxes is untenable for equitable reasons as well. At least as of February 15, 1979, the bank manager knew the contents of the boxes and said nothing about the propriety of keeping the coins and medals there. In fact, an extra box was provided for these pieces after the flood. Defendant cannot now strictly enforce the agreement when it chose not to before this suit was filed.

■ To summarize, Jose Goldbaum has established a *prima facie* case of the defendant's negligence which Bank Leumi has totally failed to rebut.[1] Accordingly, I find

---

1. An effort was made by defendant's counsel to have the manager of the Fifth Avenue branch of Bank Leumi, Nancy Mulligan, testify at trial about the unexpected nature of the sprinkler system malfunction. Defendant's attorney, however, was unable to timely produce this witness despite the court waiting almost an hour for the witness to arrive. This occurred on the second day of trial and therefore counsel had no excuse for failing to produce Ms. Mulligan on time. In any event, the branch manager's expected testimony would not have advanced defendant's cause. If, as counsel told me, Ms. Mulligan would have testified that the flooding was unexpected this would not have proven defendant's non-negligence. The bank

that defendant was negligent and is liable for those damages proximately caused by its negligence. I turn now to the issue of damages.

### III.

As stated earlier, Goldbaum kept 900 medals and 100 coins at the Fifth Avenue Bank Leumi branch. All of the coins are South American in origin and most are from Chile. The plaintiff submitted an inventory of his collection originally prepared in 1973 and brought up-to-date in March, 1979. Close to 430 of the medals kept in New York were in "mint condition," i.e. they have been preserved in the same state as they were in the day they were made. The mint condition medals were kept in cardboard boxes. Those not in mint condition were folded in plastic.

Some of the coins and medals in Goldbaum's collection at the defendant's Fifth Avenue branch were not valuable. One for example was a jukebox token which Goldbaum had kept since childhood. Some were made of tin and other less valuable metal alloys. On the basis of his own expertise and appraisals performed in Chile, however, Goldbaum testified that the mint condition coins increased in value 15 percent a year while the non-mint pieces inflated no more than 5 percent annually in value. Thus, had there been no accident, according to Goldbaum, the collection would have a value today of approximately $164,818.00.

Goldbaum produced at trial several coins that were in the flooded boxes. To my uninitiated eye it was plain that the coins and medals had been marked in some way by the water. According to Goldbaum the mint condition pieces exposed to water decreased in value 60 percent and the other pieces devalued 20 percent. Goldbaum estimated his total loss from the flooding to be $86,482.00.

Goldbaum had no documentary proof for these estimated valuations. He did not have any price lists nor did he know of any auction house prices. In addition, Goldbaum did not have any receipts for the purchase of any part of his collection. Apparently, certain pieces have different values in different markets. For instance, most of plaintiff's collection presumably has greater value in Chile than in the United States. Nevertheless, Goldbaum's testimony of the Chilean values is entitled to substantial weight based on his long experience as a numismatist in that country. He had one of the largest collections of Chilean coins anywhere in the world, and he had lectured on the subject. On this basis, I permitted much of Goldbaum's testimony to be introduced as expert testimony.

In the face of Goldbaum's testimony, defendant offered no contradictory proof of the value of the coins either before or after the flooding. Defense counsel did request permission to put an expert numismatist on the stand to rebut Goldbaum's testimony. This request, however, came at the end of trial, and no mention of a defense expert had been made in the pre-trial order signed by defendant's counsel. Thus, to accede to counsel's belated request would have required a number of day's delay in the trial. To make matters worse, when counsel informed me of his desire to offer an expert he was not even certain of the testimony that would be given. A trial is no place to be conducting discovery or surmising as to what testimony might be. Defendant must bear the consequences of general unpreparedness and incomplete discovery at the commencement of trial in a two year old case.

Based on the evidence at trial I find that plaintiff lost $86,482.00 due to defendant's negligence.[2] Accordingly, judgment will

had a duty to inspect regularly the system and properly maintain it. Only testimony surrounding the bank's efforts to fulfill this duty would have been probative to the issues at bar. Defendant's counsel made no offer of proof akin to these issues and indeed indicated that

he had yet to discuss the matter in depth with the proposed witness.

**2.** Plaintiff's remaining claim for breach of warranty was not proven at trial. Plaintiff failed to demonstrate that the lease agreement contained any warranties express or implied other

enter in favor of the plaintiff in that amount. Plaintiff is entitled to pre-judgment interest from February 14, 1979.

Settle judgment within ten days of the date hereof on five days' notice.

than to exercise reasonable care. Accordingly, judgment on this cause of action will not be entered in plaintiff's favor.