JEANETTE ABEND, Appellant, *v.* HARRY HABERMAN, Doing Business under the Name of HABERMAN IMPORTERS, Respondent.

First Department, February 24, 1953.

*Charles T. Weintraub* of counsel (*Weintraub & Fass,* attorneys), for appellant.

*Clendon H. Lee* of counsel (*O'Connor & Farber,* attorneys), for respondent.

COHN, J. In June, 1948, plaintiff informed defendant furrier that she desired to store at defendant's place of business her fur coat and hat which in the preceding December she had purchased from this furrier at a price of $1,564. When the garments were picked up for storage by defendant an informal receipt therefor was given to plaintiff by defendant's agent. This paper contained no limitation of defendant's liability on the bailment. A few days after the furs had been received in defendant's establishment, another receipt was mailed to plaintiff. The effect of this second receipt is the basis for this appeal.

Pursuant to a request in November of the same year defendant undertook to return the coat and hat to plaintiff. Delivery of the garments was entrusted to a boy in defendant's employ. On the way to his destination, a stranger struck up an acquaintance with the messenger, as a result of which the furs were handed to the stranger. They were, of course, never delivered to plaintiff. That this misdelivery was negligent and that such negligence was imputable to defendant appears to be beyond question.

This action was thereafter brought in the Municipal Court to recover for the loss of the coat and hat. The amount awarded to plaintiff after trial was $1,564. Upon appeal to the Appellate Term, the judgment (one justice dissenting) was modified by reducing the award to plaintiff to the sum of $100. The modification was predicated upon the provisions of the second, more formal, receipt mailed to plaintiff and signed only by defendant.

The problem is whether defendant's liability is to be limited to $100, the value stated in the second receipt, or whether he is liable for $1,564, the actual value of the furs, as established.

Besides setting forth that the owner's valuation was $100 and that such " valuation is the basis of our charge " pertinent clauses of the second receipt upon which defendant relies, read as follows:

" We shall keep said property insured against all direct loss or damage by fire, and in case of such loss or damage we will either pay the amount allowed by the Insurance Company or Companies to compensate such loss or damage; or we may, if we so elect, retain said property or any article thereof and pay the amount of the owner's valuation, or replace same with

others of like kind and quality, whether such loss or damage results by fire, moths, or other causes, for which we may be responsible.

"When furs placed with us for storage are undervalued, such transactions are at owner's risk, and in any event the owner's valuation hereon is the limit of our liability."

A footnote read: "Any objections to values or terms as herein stated must be made within 10 days, otherwise same are to be taken as agreed to."

As mentioned above, this storage receipt was mailed to plaintiff a few days after the agreement of bailment had been entered into between the parties and at a time subsequent to the delivery of the garments. The unilateral issuance of this storage receipt merely constituted evidence of the receipt of the property involved and, in the absence of consent by plaintiff, did not superimpose its terms upon the previous contract which had been entered into. (*Waldron* v. *Fargo,* 170 N. Y. 130, 137.) The receipt issued upon delivery of the bailment, containing no limitation of liability, was thus the contract between the parties.

Even were we to assume that the provisions of the later storage receipt were controlling, defendant's attempt to limit his liability therein for loss, to the sum of $100, representing the value recited in the receipt, we think, is wholly ineffective. There is absent any provision in the formal receipt to the effect that the limitation of liability extends to negligence or other fault of the party attempting to be relieved of his common-law responsibility. Such limitation will be effective only if it is explicit and "sufficiently simple that a running reading will reveal a clear meaning."

This court has recently decided that where the stated valuation in a fur storage receipt does not reflect the true valuation of the bailed article, the terms of the agreement will be construed most strongly against the furrier-bailee, and the alleged limitation will be given effect only if the agreement is absolutely clear in its intent and purpose. (*Howard* v. *Handler Bros. & Winell,* 279 App. Div. 72, affd. 303 N. Y. 990; *Rappaport* v. *Phil Gottlieb-Sattler, Inc.,* 280 App. Div. 424, affd. 305 N. Y. 594.)

In the *Howard* case, the apposite criterion was forcefully stated by Presiding Justice PECK, at page 75: "We will not extend our consideration of the case beyond the question of whether defendant succeeded by its draftsmanship in effecting the exculpation which it claims. The law does not look with

favor upon attempts to avoid liability for one's own fault, and although it is permissible in instances to contract one's self out of liability for negligence, such a result is not to be countenanced unless it is absolutely clear that such was the understanding. It must be precisely provided that limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility.''

That strict standard of preciseness and clarity in language purporting to limit liability was reiterated by this court in the *Rappaport* case, where, as in the *Howard* case, an attempted limitation of liability by a furrier-bailee was held ineffective for that purpose.

The clauses relied upon by defendant here as absolving it from the full loss caused by its own negligence do not achieve, but, in fact, offend, that degree of certainty which is mandatory under the decisions of this court.

The determination of the Appellate Term, insofar as it modified the judgment of the Municipal Court, should be reversed and the judgment of the Municipal Court in favor of plaintiff in the sum of $1,935.84, should be reinstated, with costs.

PECK, P. J., DORE and VAN VOORHIS, JJ., concur.

Determination, insofar as it modified the judgment of the Municipal Court, unanimously reversed and the judgment of the Municipal Court in favor of the plaintiff in the sum of $1,935.84 reinstated, with costs to the appellant in this court and in the Appellate Term.