53 N.J. Super. 325 (1959)
147 A.2d 298
PATRICK J. CLARK, JR., PLAINTIFF-RESPONDENT,
v.
NATIONAL MOVERS CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1958.
Decided January 5, 1959.
*327 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Peter W. Thomas argued the cause for defendant-appellant (Messrs. Lum, Fairlie and Foster, attorneys).
Mr. Theodore Rabinowitz argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an action by the bailor of household goods stored in defendant's public warehouse for damages resulting from loss of the goods when the entire warehouse building was destroyed by fire on December 4, 1956. A jury in the Law Division of the Superior Court, Hudson County, awarded the plaintiff a verdict of $2,000, the maximum stipulated in the agreement between the parties.
The pretrial order inferentially bases plaintiff's theory *328 of recovery on defendant's negligence in carrying out its agreement of bailment with plaintiff. An amendment to the order added the theory of res ipsa loquitur, but both at the trial and on appeal plaintiff relied on certain specific assignments of negligence discussed hereinafter.
The warehouse building, situated on Route S-3 in Rutherford, was newly built in November 1954. It was described at the trial by George Andre, defendant's manager of operations, as a "fireproof warehouse." It was apparently a one-story structure, built of concrete, cinder block and steel. The interior consisted of 20,000 square feet, divided by three "fireproof" walls of cinder block in each of which was installed a "safety fire door." These were automatically closed at all times when not in use. The plans for the building had been approved by the local fire prevention official, who was also building inspector. Andre, testifying as an expert, said the building had been erected after and upon the basis of a study of recently built fireproof warehouses specializing in the storage of household goods.
There were 25 manually operated fire extinguishers and 20 pails of sand throughout the warehouse, and "no smoking" signs were posted. All the main electrical switches were "pulled" after the building was closed for the day. Although the premises were locked and fenced, the warehouse was unattended at night, and until the maintenance man arrived in the morning, usually at 6:00 A.M. There was no automatic fire alarm system nor automatic sprinklers. The nearest public fire hydrant was 330 feet away from the building. The local fire department operates on a volunteer basis.
In the part of the warehouse devoted to storage of household goods the "pallet storage" system was used. This, described by Andre as the latest method, involves the packing of whole collections of such articles in large wooden, sealed containers. This procedure requires the use in the packing room of quantities of lumber, wrapping paper and excelsior, the last concededly a readily inflammable substance. The packing room was, however, cleaned out each afternoon.
*329 When the maintenance man came to work on December 4, 1956, shortly before 6:00 A.M., and opened the warehouse door, he was confronted with a "lot of smoke" of which there was no evidence before he opened the door. He closed the door and telephoned the fire department from a motel some 300 feet away. Although the firemen and auxiliary equipment from two other towns fought the blaze, the fire continued all day and night, and erupted again the next day. The destruction of the building was complete, even the steel roof girders buckling and the roof and walls collapsing. The cause of the fire was never discovered.
Defendant's first point of appeal is the admission into evidence, over objection, on the cross-examination of defendant's witness, Andre, of testimony concerning fire-prevention features of the new warehouse building which defendant erected to replace the burned-out structure. Andre was allowed to say that the new building had an automatic sprinkler system, a water hydrant in the building and an automatic fire alarm in conjunction with the American District Telegraph System. Plaintiff quite ingenuously defends this line of examination as showing the "simple absolute safety steps" which were "taken in rebuilding of exact duplicate of prior warehouse, with only the added items which were so basic." In other words, the incorporation of the safety features in the new building is assigned as evidence of negligence in the construction of the original structure. The proof was clearly inadmissible and its reception for the purpose indicated prejudicial error. 2 Wigmore on Evidence (3rd ed. 1940), § 283, p. 151 et seq.; and see Perry v. Levy, 87 N.J.L. 670, 672 (E. & A. 1915); Millman v. United States Mortgage and Title Guaranty Co., 121 N.J.L. 28 (Sup. Ct. 1938); Pirozzi v. Acme Holding Company, 5 N.J. 178, 189 (1950). While this line of cross-examination might possibly have been defended as bearing upon the weight to be accorded to the opinion of the witness as a purported expert, this was not the proffered justification for it, and the jury undoubtedly accepted it as evidence of negligence in the construction and maintenance *330 of the building, and, therefore, in the safekeeping of plaintiff's goods.
Although the judgment must be reversed for the reason stated, the likelihood of a new trial makes it advisable for us to express our views respecting defendant's other points of appeal. The first of these is that its motion for a directed verdict should have been granted "because no negligence was proved."
Defendant concedes that upon the showing by plaintiff of the bailment and of the loss of the goods while in its possession there arose a procedural presumption of negligence requiring the defendant to come forward with evidence to show that the loss of the property did not occur through its negligence or that it exercised due care. Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co., 1 N.J. 239, 242 (1949); Hopper's, Inc. v. Red Bank Airport, Inc., 15 N.J. Super. 349, 352 (App. Div. 1951). It argues that it did so here and that, since the ultimate burden of persuasion on the issue of negligence never left the plaintiff, ibid., and there was no affirmative proof of negligence by the latter, a directed verdict for the defendant became mandatory. The first thought which comes to mind by way of reaction to this position is the question as to whether, as of 1954, the use of sprinkler and automatic fire alarm systems in public warehouse buildings as safety devices was not so common as to permit a jury to conclude that their absence imported negligence in the operation of the building, even without the expression of an opinion to that effect by an industry expert. We refrain from passing upon the point, as it has not been adequately argued upon the appeal. But we find ample other basis for a conclusion of negligence in the theory of liability posed to the jury in the charge of the trial judge; that is, whether there were adequate and reasonable measures for the detection, reporting and control of a fire which might start at night when no one was in attendance at the building.
Although it is recognized that the mere occurrence of a fire of unknown origin does not of itself imply negligence, *331 Menth v. Breeze Corporation, 4 N.J. 428 (1950); Franklin v. Airport Grills, Inc., 21 N.J. Super. 409 (App. Div. 1952), the defendant's duty of due care extended not alone to conduct related to the prevention of fire but also to combatting or containing it after eruption. See Hopper's, Inc. v. Red Bank Airport, Inc., supra (15 N.J. Super., at pages 353, 354); cf. Menth v. Breeze Corporation, supra; Annotation, 18 A.L.R.2d 1084 (1951). In the present case the provision of fire extinguishers and sand pails all about the premises is ample indication that defendant could foresee the possibility of the eruption of fire notwithstanding the precautions its manager testified were taken in minimizing that hazard. But a jury could reasonably conclude that there was an absence of reasonable care to provide means for detecting and combatting the spread of a fire which, as was the case here, might erupt during the night, whether or not originating in causes having their inception during the day. Such an assessment of fault might rest upon the fact that there was no one in attendance at the building at night to use the extinguishers and sand, nor any other means of notifying the authorities before a night-time fire might attain disastrous proportions by spread. These latter circumstances and considerations clearly distinguish the case before us from the respective situations presented in Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467 (App. Div. 1952), and Franklin v. Airport Grills, Inc., supra, relied upon by defendant.
Defendant has also complained of the refusal of the trial judge to grant its request to charge the rule as to the burden of proof and of going forward, referred to above as applicable in a bailment case. While we do not think the defendant was prejudiced by the omission in this case, it would have been preferable for the rule to have been charged, as requested, in the tenor of the cases cited.
Reversed and remanded for a new trial.