**WORLD PRODUCTS, INC., Plaintiff,**

v.

**CENTRAL FREIGHT SERVICE, INC.,
Defendant.**

Civ. A. No. 362–61.

United States District Court
D. New Jersey.

Oct. 29, 1963.

Green & Lasky, George J. Lasky and Robert Silverman, Newark, N. J., for plaintiff.

Charles E. Howell, Madison, N. J., for defendant.

AUGELLI, District Judge.

This is an action against a warehouse‑man to recover damages for negligence and breach of a contract of bailment.

The case was tried to the Court, sitting without a jury.

Plaintiff, World Products, Inc., is a corporation of Ohio. Defendant, Central Freight Service, Inc., is a New Jersey corporation. Jurisdiction is based on diversity of citizenship and allegation of the requisite amount in controversy.

Defendant operated four warehouses in New Jersey. One was located in Jersey City, one in Port Newark, and two in Edgewater. In 1960, a quantity of pipe fittings, imported by plaintiff from Japan, was damaged while stored in defendant's main warehouse located at 839 River Road in Edgewater. This particular warehouse extended in part over the Hudson River.

On June 15, 1960, defendant took a first shipment of 1106 cartons of pipe fittings into its Port Newark warehouse under an arrangement made the month before with plaintiff. Subsequent shipments went to defendant's main Edgewater warehouse on July 21, July 26, August 8 and August 14, 1960. The unsold remainder of the first shipment was in the meantime transferred from Port Newark to said Edgewater warehouse.

On September 12, 1960, Hurricane Donna struck the Metropolitan New York area, including Edgewater. The tide waters of the Hudson River rose about four feet above the mean high water mark, and entered the first floor of defendant's main Edgewater warehouse. A number of cartons of plaintiff's pipe fittings, stored therein on approximately four inches of dunnage, were damaged by the resulting tide waters which flooded the building.

On September 17, defendant informed plaintiff by letter that certain of its merchandise had been damaged as a result of Hurricane Donna. Defendant, thereafter, segregated 1688 cartons of pipe fittings belonging to plaintiff, which had become watersoaked. On October 14, plaintiff's sales representative inspected these cartons at Edgewater. After an exchange of correspondence, plaintiff's traffic manager, on October 25, authorized defendant to send the 1688 cartons to plaintiff's plant in Ohio. Two days later, defendant forwarded to plaintiff a list of the damaged items. The goods were then shipped, and arrived in Ohio on November 29, where they were examined by plaintiff's president, treasurer, and quality control expert. They found the fittings could not be salvaged because the threads had been corroded by the action of the salt water, and that it was not possible to restore them to a condition that would make them suitable for resale. The entire shipment was melted down and sold as scrap.

The warehouse receipts, which are in evidence, embody the agreements between the parties for each shipment of merchandise covered thereby. The receipts declare on their face that the goods listed "were received in apparent good order, except as noted". Only a few minor shortages are noted on several of the receipts. Other terms and conditions are stated on the reverse side. Section 10(a) of each warehouse receipt recites that in the absence of written provisions, the warehouseman has the responsibility of exercising "the reasonable care and diligence required by law". Section 10(e) provides that the warehouseman shall not be liable for certain types of damage caused by acts beyond his control, but does not mention floods, hurricanes, or storms. Finally, section 10(f) limits the liability of the warehouseman, for his acts resulting in damage to goods stored, to the actual valuation of the goods at the time received for storage, but not to exceed 500 times the base storage rate per month of the damaged goods, unless an excess value is declared at the time of storage.

Plaintiff claims damages of $40,622.17 by reason of defendant's alleged negligence in storing the goods, and by reason of defendant's alleged breach of the bailment contract in failing to return the merchandise in the same condition as delivered or, alternatively, in failing to notify plaintiff that the goods were to be stored at Edgewater rather than at Port Newark. Defendant admits that a bailment existed, but denies a breach thereof,

or any negligence. Defendant also contends that any damages to plaintiff were caused by an Act of God and that, if defendant is liable, such liability is limited by section 10(f) of the warehouse receipt to $26,271.00.

■ New Jersey substantive law is, of course, applicable in this case. The Uniform Warehouse Receipts Act, N.J.S.A. 57:1–24, in force in 1960 *, provided that:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

■■ In New Jersey, proof of loss establishes a sufficient prima facie case against a bailee. When goods are delivered to a bailee in good condition and are returned in a damaged state, the law presumes negligence, and the bailee must show that he exercised a degree of care sufficient to rebut the presumption of negligence, or that the loss did not occur through his negligence. Jackson v. McDonald, 70 N.J.L. 594, 57 A. 126 (1904); Armstrong Rubber Co. v. Erie R.R. Co., 103 N.J.L. 579, 137 A. 596 (1927); Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co., 1 N.J. 239, 62 A.2d 806 (1949).

The Bachman Chocolate Mfg. Co. case, supra, is somewhat similar to the case at bar. In that case, 193 bags of cocoa beans stored in the defendant's warehouse were damaged by flood water during a hurricane in 1944. The warehouseman's receipt which covered the beans contained the same language concerning reasonable care and diligence by the bailee as is found in section 10(a) of the receipt in the case at bar. In that case too, the defendant alleged that the hurricane was the sole cause of the damage, and amounted to an Act of God which relieved defendant from liability. The defendant showed that the hurricane was of such unusual severity as to constitute an Act of God. De Cicco v. Marlou Holding Co., 137 N.J.L. 186, 59 A.2d 227 (1948). See also Bauer v. 141–149 Cedar Lane Holding Co., 42 N.J.Super, 110, 125 A.2d 884 (App.Div.1956), affirmed 24 N.J. 139, 130 A.2d 833 (1957). The court, in affirming the trial judge's denial of defendant's motion for a directed verdict, determined that the case was properly submitted to the jury because of the conflicting testimony presented on the issue of whether the plaintiff had used due care in anticipating and guarding against the storm.

■ Hurricane Donna certainly qualifies as an Act of God under the cases cited. The official reports of the Weather Bureau and of the Army Corps of Engineers indicate that as the storm passed over the New York City area about 12 noon on September 12, wind speeds were of hurricane velocity (over 74 miles per hour) and the highest since the Hurricane of September 1944. Because the passage of the storm nearly coincided with the time of predicted high tide, tides were the highest on record in many places along the Coast, approximately four to six feet above normal. Dr. Newstein, a meteorologist, also testified at the trial as to the extreme severity of the storm.

Although Hurricane Donna constituted an Act of God, the question still remains whether the storm was the sole cause of the damage to plaintiff's goods. In other words, if defendant did not exercise reasonable care in storing plaintiff's fittings, and if that failure was a proximate cause

* The Uniform Commercial Code, N.J.S.A. 12A:7–204(1), now in effect, provides:
"A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care."

of plaintiff's loss, then defendant would not be relieved of liability by the Act of God. In order to rebut the presumption of negligence on its part, defendant introduced evidence that the flooding of its Edgewater warehouse could not have reasonably been guarded against or anticipated. The testimony was that during the seven years defendant occupied the warehouse prior to "Donna", the river tide had never risen to the level of the warehouse floor; that "Donna" was the first hurricane to pass within 50 miles of New York in those seven years; that no sufficient warning was given by the Weather Bureau concerning the high tides; that even if defendant had adequate warning, it could not have moved plaintiff's merchandise in time because of the lack of available storage space and the total volume of other merchandise on the floor; and that increasing the dunnage would have been futile because of the height attained by the flood water in the building.

On the other hand, there was testimony, favorable to plaintiff, that as much as 70% of the first floor of the Edgewater warehouse was, at normal high tide, three to four feet above the water of the Hudson River; that defendant should not have stored goods over the river without making an investigation of the tides in the area during storms; that such an investigation would have disclosed that on a number of occasions prior to "Donna", the waters of the Hudson must have risen to or above the level of the warehouse floor; that defendant received adequate warning, a day or two before, that a hurricane was moving up the Atlantic Coast; that defendant should have been aware of Weather Bureau Reports from New York City, about twelve hours before the full force of the hurricane struck Edgewater, concerning the approach of the storm and the forecasted high tides; that defendant took no precautions to protect the goods in the warehouse from flood damage either before or after it learned of the approaching hurricane; and that the use of additional dunnage by the defendant would have mitigated or avoided the loss, but was not attempted.

■ Upon considering all the evidence presented in this case, the Court finds as a fact that defendant was negligent in storing plaintiff's goods in its Edgewater warehouse without taking sufficient precautions to insure that high tides caused by a severe storm such as Hurricane Donna would not result in the flooding of its warehouse. The Court also finds that, despite the fact that "Donna" qualifies as an Act of God, defendant's negligence was a substantial factor and cause of the damage to plaintiff's merchandise. In view of these findings, the Court need not consider the other contentions made by the parties on the issue of liability.

On the question of damages, plaintiff has presented evidence that the replacement value of the damaged goods was $41,434.13. In addition, plaintiff adds freight and labor charges, and deducts salvage value, resulting in a total claim of $40,622.17. Defendant contends that its liability, if any, is limited under section 10(f) of the warehouse receipt, to $26,271.00, which is derived from the base storage rate of $.07 per cwt. and the weight of 75,060 lbs. listed on defendant's delivery order for the 1688 damaged cartons "returned for salvage" (500 X $.07 X 750.6).

■■ Plaintiff argues that the limitation of liability in section 10(f) is not binding on it for the reason that said section was not specifically called to plaintiff's attention by defendant. See Henningsen v. Bloomfield Motors, Inc., 32 N. J. 358, 396–397, 161 A.2d 69, 75 A.L.R.2d 1 (1960). However, Henningsen and the cases cited therein deal with situations where the seller has an unfair bargaining advantage over the buyer. Such cases have no application where both parties are business corporations, engaged in a commercial relationship with one another over an extended period of time, and where the contract fairly spells out the limitation of liability and contains a provision for extra charges if an excess value is declared. Such a reasonable contractual limitation of warehouseman's

liability is not invalid under New Jersey law, in the absence of fraud or a violation of public policy. See Henningsen v. Bloomfield Motors, Inc., supra; Silvestri v. South Orange Storage Corp., 14 N.J.Super. 205, 81 A.2d 502 (1951); N.J.S.A. 12A:7-204(2), 12A:2-719(3). Therefore, the Court finds that defendant's liability in this case is limited to $26,271.00.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

Judgment will be entered for plaintiff for $26,271.00 plus interest. Submit order.