834 A.2d 426 (2003)
364 N.J. Super. 13
Felice C. JASPHY, a/k/a Ztzipi Jasphy, Plaintiff-Respondent,
v.
Elana OSINSKY, a/k/a Ilana Shomrony, Ernest Osinsky and Cedar Lane Furs, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 2003.
Decided November 5, 2003.
*427 Brian J. Bolan, Parsippany, argued the cause for appellants (Gennet, Kallmann, Antin & Robinson, attorneys; Mr. Bolan, on the brief).
Jill S. Taylor, argued the cause for respondent (Leonard S. Miller, attorney, Fair Lawn; Ms. Taylor, on the brief).
Before Judges NEWMAN, FALL and PARRILLO.
The opinion of the court was delivered by NEWMAN, J.A.D.
The limitation of liability clause in a fur storage agreement, limiting the liability of the furrier to $1 per garment, was struck down by the trial court as unconscionable. We agree and affirm.
The relevant facts which are not disputed may be summarized as follows. On March 27, 2001, plaintiff Felice Jasphy brought three fur coats to defendant Ilana Shomrony's (initially misidentified as Elana *428 Osinsky) establishment trading as Cedar Lane Furs in Teaneck for storage and cleaning. The three coats included a ranch mink coat, a Shearling, and a blush mink. In addition to the storage of the three coats, plaintiff also sought cleaning of the ranch mink. In 1997, the ranch mink had been appraised for $11,500; the Shearling for $3500; and the blush mink for $3995.
Plaintiff signed a written agreement, labeled "fur storage sales receipt," which included plaintiff's name and address, and the price of the storage and cleaning. On the back of the receipt, the following pre-printed provision limiting defendant's liability read:
[t]his receipt is a storage contract, articles listed are accepted for storage until December 31, of dated year, subject to the terms and conditions hereof, in accepting this receipt, the depositor agrees to be bound by all its terms and conditions and acknowledges that this receipt is the entire agreement with the furrier, which cannot be changed except by endorsement herein signed by the furrier. If no value is specified, or if no separate insurance covering the garment is declared at the time of issuance of this receipt, insurance in the amount of $1.00 will be placed on the garment....
Immediately above the location on the receipt for a customer's signature, the following was printed: "I understand and agree that Cedar Lane Furs' liability for loss or damage from any cause whatsoever, including their own negligence or that of employees and others, is limited to the declared valuation." Plaintiff signed and dated this receipt on March 27, 2001.
Plaintiff did not state the value of the coats or declare whether she had separate insurance coverage when the receipt was issued. There is no identifiable room provided on the receipt to specify such information. The limitation of the furrier's liability was not brought to plaintiff's attention, nor was she asked to furnish the value of her coats for storage.
The following day, March 28, 2001, a fire swept through Cedar Lane Furs, causing plaintiff's three furs to be completely destroyed. A hot iron, which defendant apparently failed to unplug overnight, caused the fire. Plaintiff claims she subsequently had a conversation with defendant during which defendant informed plaintiff that her furs had not been in the fur vault on the night of the fire. According to plaintiff, defendant initially told her that the furs were safe and would be returned to her. By letter to defendant dated April 27, 2001, after learning the furs were a complete loss, plaintiff demanded full replacement value and expressed her desire for an amicable settlement.
Plaintiff received no response to this letter. On May 23, 2001, plaintiff's counsel sent a letter to defendant seeking an amicable resolution of the issue, but advising that legal action would be taken if the parties did not resolve the problem. Defendant responded by letter dated July 16, 2001, and enclosed a "Bailee's Customer's Affidavit Claim Form" for plaintiff to fill out and send to defendant's insurance company for reimbursement.
This letter to plaintiff stated in part "[c]ustomers who have purchased insurance through us will be compensated for the declared amount. Customers who carry insurance on their Home Owners policy or a "floater" policy covering the garment(s) are required to submit a claim to their insurance for reimbursement." In cases where customers separately insured their furs, defendant's insurance apparently served as a secondary or excess policy. Plaintiff submitted a claim form for each of her destroyed furs and returned the forms to defendant. Plaintiff never received any *429 reimbursement from defendant's insurance company. Thereafter, plaintiff brought this action.
In moving for summary judgment, defendant sought enforcement of the contractual provision limiting liability to $1 per garment, and dismissal of the consumer fraud allegation. Judge Doyne denied summary judgment and held the limitation of liability clause in this bailment contract to be unenforceable. He made the following findings:
Nowhere on the form is there a space provided for a customer to fill in value. Defendants do not allege that their representative in any way highlighted these provisions, discussed these provisions with the customer, or in any way alerted the customer to the same.
....
Defendants move for summary judgment on the ground that there was no value specified, and the insurance for each item is limited to one dollar per garment. It asserts the position that this is a bailment situation, and as such, general rules of contractual interpretation are applicable.
....
Continuing, the court shall address the propriety and legal effect of the limitation of liability clause....
Further, such limitations are read strictly with every doubt resolved against the party seeking their protection[.]... Liability limitations upheld by the [c]ourts have usually been the subject of extensive negotiations between the parties[.] ...
In the instant matter based on the circumstances under which plaintiff executed the contact which are not disputed in the papers submitted before the court, the [c]ourt finds the limitation of liability clause invalid and orders the same stricken.
The record before the [c]ourt is devoid of any evidence that the limitation of liability clause at issue was part of the parties' agreement.
Defendants ... [do] not dispute plaintiff's allegation that she was unaware the agreement contained a blanket disclaimer clause. As it appears, the clause was not part of the bargain. It is therefore stricken from the agreement....

[Citations omitted.]
Relying on Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960), and noting that limitations on liability are frowned upon and generally unenforceable unless bargained for, Judge Doyne struck down the furrier's liability limitation clause.
On December 10, 2002, a consent judgment was entered against defendants in favor of plaintiff in the amount of $16,000, subject to the disposition of defendants' appeal from the June 17, 2002 order denying summary judgment to defendants.
On appeal, the following issues are presented for our consideration:
POINT I
THE EXPRESS TERMS OF THE CONTRACT FOR STORAGE LIMIT DEFENDANTS' LIABILITY TO NOT MORE THAN $1.00 PER GARMENT, AND JUDGE DOYNE'S ORDER INVALIDATING AND STRIKING THE LIMITATION OF LIABILITY PROVISION OF THE CONTRACT, SHOULD BE REVERSED, LEAVING THE TERMS IN FORCE.
POINT II
THE ORDER INVALIDATING THE LIMITATION OF LIABILITY CLAUSE CONTAINED IN THE FUR STORAGE AGREEMENT SHOULD BE REVERSED BECAUSE SUCH *430 CLAUSES ARE SANCTIONED BY N.J.S.A. 12A:7-204(2).
We address the issues in the order just recited.

I.
Defendant argues that the trial court erroneously struck the clause limiting their liability to plaintiff to no more than $1 per garment.
Both parties agree that the storage receipt was a bailment contract. Indeed, a bailment is established when property is turned over into the possession and control of the bailee. McFarland v. C.A.R. Corp., 58 N.J.Super. 449, 452, 156 A.2d 488, 489 (App.Div.1959). When a bailment has mutual benefit for the bailor and bailee, the bailee has a duty to "exercise reasonable care for the safekeeping of the chattel bailed." Parnell v. Rohrer Chevrolet Co. Inc., 95 N.J.Super. 471, 477, 231 A.2d 824, 827 (App.Div.1967). Once a bailment exists and the loss of the goods while in the bailee's possession is established, a presumption of negligence arises, requiring the bailee to come forward with evidence to show that the loss did not occur through its negligence or that it exercised due care. Clark v. Nat'l Movers Co., Inc., 53 N.J.Super. 325, 330, 147 A.2d 298, 301 (App.Div.1959). Secondly, there is no dispute that the contract in the present case is a contract of adhesion. Defendant conceded this point at argument.
Defendant first argues that the order striking the limitation of liability clause constitutes reversible error because Judge Doyne incorrectly relied on Henningsen, supra. Defendant argues the facts in Henningsen differ materially from the present case because, unlike the limited warranty in Henningsen, which was the uniform warranty of the Automobile Manufacturers Association, the limitation of liability clause here was a product of defendant's "mom and pop" fur store. Furthermore, defendant contends that a car has become a necessity, as Henningsen noted, while fur storage is not. Henningsen, supra, 32 N.J. at 387, 161 A.2d at 85. In response, plaintiff contends Henningsen is analogous to the present case because both cases involved a consumer with unequal bargaining power. Likewise, plaintiff disputes the implication arising from the defendant's characterization of the store as a "mom and pop" operation, observing that defendants were sophisticated enough to include limitation of liability provisions in all their contracts. Ibid.
While the factual circumstances of Henningsen differ from those present here, the public policy concerns in Henningsen regarding inequality of bargaining power, and in fact the complete lack of opportunity to bargain at all, are fully applicable. Although no published case law in this State addresses the question of limitation of liability provisions in fur storage contracts, other jurisdictions have confronted this issue.
The case law from other states reveals a trend towards disfavoring limitation of liability clauses in contracts between furriers and consumers. See, e.g., Lerner v. Brettschneider, 123 Ariz. 152, 598 P.2d 515 (Ct.App.1979); Carter v. Reichlin Furriers, 34 Conn.Supp. 661, 386 A.2d 647 (1977); Abend v. Haberman, 281 A.D. 262, 119 N.Y.S.2d 488 (App.Div.1953); Howard v. Handler Bros. & Winell, Inc., 279 A.D. 72, 107 N.Y.S.2d 749 (App.Div.1951), aff'd, 303 N.Y. 990, 106 N.E.2d 67 (1952). In Abend, which involved a furrier's attempt to limit liability to $100 when the fur was actually worth $1564, the court noted
where the stated valuation in a fur storage receipt does not reflect the true valuation of the bailed article, the terms *431 of the agreement will be construed most strongly against the furrier-bailee, and the alleged limitation will be given effect only if the agreement is absolutely clear in its intent and purpose.
[119 N.Y.S.2d at 491].
The facts of Howard are quite similar to this case. There, the plaintiff brought a mink coat to defendant's establishment for storage and cleaning. Howard, supra, 107 N.Y.S.2d at 750. The coat was never returned and defendant conceded negligence. Ibid. The defendant's entire defense rested on a limitation of liability clause providing "[o]ur [l]iability is limited to the sum of $10 unless a declared valuation is placed on the garment to be stored and an extra charge for insurance is made." Ibid. The court characterized the $10 valuation as "off-handed," noting that the defendant "could just as well, under the terms of the agreement, have insisted upon a limitation of $1." Id. at 752.
Several courts have held that in order for a furrier to enforce a limitation of liability provision, the customer must have notice of the limitation at the time of the transaction. Carter, supra, 386 A.2d at 650;; Rappaport v. Storfer Bros., Inc., 2 Misc.2d 395, 154 N.Y.S.2d 113, 114 (App. Term 1956); Magee v. Walbro, Inc., 171 Ill.App.3d 774, 121 Ill.Dec. 668, 525 N.E.2d 975, 980 (1988); but see Schoen v. Wallace, 334 Ill.App. 294, 78 N.E.2d 801 (1948) (enforcing a furrier's limitation of liability where plaintiff and furrier agreed that a valuation of $100 should be placed on the fur).
Furthermore, like New Jersey, other jurisdictions appear reluctant to enforce a limitation of liability clause against a lay bailor as opposed to a more sophisticated businessman. Lerner, supra, 598 P.2d at 519; Carter, supra, 386 A.2d at 650; World Prods., Inc. v. Cent. Freight Serv., Inc., 222 F.Supp. 849, 852 (D.N.J.1963) (applying New Jersey law), aff'd in part, rev'd in part on other grounds, 342 F.2d 290 (3d Cir.1965). For example, World Prods., Inc., supra, held that unlike the situation in Henningsen, where the seller had unfair bargaining power, a limitation of liability clause is enforceable "where both parties are business corporations, engaged in a commercial relationship ... over an extended period of time." 222 F.Supp. at 852.
The undisputed facts show that the contract was a standard contract pre-printed before plaintiff even entered the store. Plaintiff was given no opportunity to negotiate its terms with defendant. Rudbart v. No. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681 (1992). Plaintiff was a member of the public, not a business person possessing knowledge of the fur industry. Lerner, supra, 598 P.2d at 519. As such, plaintiff was in an inferior bargaining position compared to defendant. Rudbart, supra, at 356, 605 A.2d at 687.
There is no indication that plaintiff read the terms of the agreement or knew of the limitation of liability at the time of the transaction. Defendant did not highlight or bring to plaintiff's attention the limitation of liability clause. Nor did defendant inquire as to plaintiff's valuation of each fur piece or provide a space on its preprinted form to include valuation figures. Plaintiff had no economic incentive to sign this agreement; it was simply a prerequisite to having her furs stored and cleaned. See Samelson v. Harper's Furs, 144 Conn. 368, 131 A.2d 827 (1957) (upholding a furrier's attempt to limit liability where, in contrast to the present case, the storage rate was based on the customer's valuation of the fur, and the customer set the value at $100 because she had separate insurance). Defendants failed to secure plaintiff's furs in their vault overnight. In fact, *432 it appears the fire itself was a result of defendant's negligent failure to unplug a hot iron. Yet, defendants still seek to limit their liability for plaintiff's furs, which were destroyed as a result of their negligence and are valued at approximately $18,000, to $3. Such a result would be unconscionable. Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc., 913 F.Supp. 837, 845 (D.N.J.1995) (applying New Jersey law).
Under the circumstances presented, we do not hesitate to hold the limitation of liability clause unenforceable and properly stricken from the contract by the trial court.

II.
Defendant argues N.J.S.A. 12A:7-204(2) expressly sanctions limitation on liability clauses in storage agreements, and therefore the order invalidating the clause in the present case should be reversed.
N.J.S.A. 12A:7-204(2) provides in part:
[d]amages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, however, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any.
Defendant contends that this statutory provision is dispositive of the limitation of liability issue, approving the insertion of such clause in a storage agreement. We reject defendants' contention.
N.J.S.A. 12A:7-204(2) applies exclusively to storage/warehouse agreements. Even though plaintiff sought cleaning of one of her furs, we resolve this issue on the assumption that the contract here was a storage agreement. N.J.S.A. 12A:7-204(2) does not permit warehousemen to limit their liability in all possible ways, insulated from court review. Rather, N.J.S.A. 12A:7-204(2) must adhere to the limitations imposed by case law and is subject to traditional contractual limitations such as unconscionability. See Gonzalez v. A-1 Self Storage, Inc., 350 N.J.Super. 403, 410, 795 A.2d 885, 889 (Law Div.2000) (finding unconscionable a limitation of liability clause in a storage agreement which fell under N.J.S.A. 12A:7-204(2)); accord Lerner, supra, 598 P.2d at 518; Carter, supra, 386 A.2d at 649-50. Furthermore, we note that the contract here attempts to limit defendant's liability even for their own negligence. Such a limitation in storage agreements is impermissible under the U.C.C. since it conflicts with a warehouseman's duty of care under 7-204(1). Butler Mfg. Co. v. Americold Corp., 835 F.Supp. 1274, 1280 (D.Kan.1993) (applying Kansas adoption of the U.C.C.). In fact, N.J.S.A. 12A:7-202(3) specifically invalidates any warehouse receipt which impairs a warehouseman's duty of care under N.J.S.A. 12A:7-204(2). As previously discussed, the limitation of liability clause fails to pass acceptance and was properly held unenforceable.
Affirmed.