**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3478-24

JANINE DURANTE,

    Plaintiff-Respondent,

v.

LISA DURANTE,

    Defendant-Appellant.

_____

        Submitted May 19, 2026 – Decided May 29, 2026

        Before Judges Firko and Vinci.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-006492-24.

        Lisa Durante, self-represented appellant.

        Respondent has not filed a brief.

PER CURIAM

    In this one-sided appeal, defendant Lisa Durante appeals from a March 20, 2025 order for judgment awarding her sister, plaintiff Janine Durante, $20,000, plus court costs of $82, for a total judgment of $20,082, following a

bench trial in the Special Civil Part. Defendant also appeals from a May 9, 2025 order denying her motion for reconsideration. We affirm both orders.

I.

We derive the following facts from the trial record. Plaintiff testified she did not have a great relationship with her family for many years. When her family came back into her life, plaintiff stated she was going through a "tough time" in her marriage, breaking up with her husband of almost thirty years, selling her house, and losing her job. Plaintiff testified she and her son "had nowhere to go," and she "begged" her mother, Geraldine,[1] to let them stay at her "five-bedroom home in Livingston" where her mother lived alone. According to plaintiff, defendant told their mother that plaintiff should pay $1,700 a month rent. Plaintiff felt this was "excessive" and "settled on $1,200 a month."

Plaintiff testified that during this period of "turmoil" in February 2022, she gave defendant her jewelry, including her wedding ring, and $10,000 in cash, for safekeeping. Plaintiff testified defendant offered to help keep her valuables "safe in her safe deposit box." Plaintiff claimed she "trusted" defendant. Plaintiff "figured" her jewelry was worth $10,000.

---

[1] Geraldine's last name is not contained in the record.

A-3478-24

The judge allowed plaintiff to read screenshots of text messages between herself and defendant into the record, which were marked P-1 for identification. Prior to doing so, the judge questioned plaintiff as to whether the text messages were taken directly from her phone. Plaintiff answered in the affirmative and confirmed she did not alter them. Plaintiff also verified defendant's name matched her phone number.

Over objection, plaintiff read the text messages into the record as follows:

"Hi. I need to get into the safe deposit box. But only around Tuesday, after your work of course, or Saturday morning. Let me know when it's good for you. Thanks." "Not [until] you pay your mother what you owe her." "So you're keeping my stuff. Wow, I should have known; never trust the bitch I had to deal with." "Never trust—B-I-T-C-H. I had to deal with your problems. Don't have to deal with you and your nasty self. You should be ashamed of yourself, just as bad as in the way you are treating your mother." "Wow. Seriously, you are mean. You have my money. I don't—maybe I was going to pay her with that money." "I'm not stealing it, just holding you—you hostage. Yes, I'm a—I'm awful nasty, spiteful B-I-T-C-H that I've always been. I was never nice." "I will not—when you came up with—when you talked about us moving, there was $1200; $600 each. I paid my six, but . . . hadn't gotten paid. I was—you used the money." "Okay. Get the contents of the box, I'll be able to pay her then secure my apartment. You have been nasty and extremely rude, just as they don't like your nasty ass. Just get your box, my mom is paid in full, and all your garbage is out. I'll pay her from the box and sell your stuff. PS, it's already somewhere else. . . ."

3

Plaintiff explained her wedding ring that she gave defendant to safekeep "was over a carat," and the "loose diamond" "was a carat." Plaintiff testified she also gave defendant "a lot of gold jewelry[,] necklaces, . . . earrings[,] and rings," and did not take pictures because she "didn't think [she] needed to" since she was dealing with her sister. Plaintiff stated she "settled" on $20,000—$10,000 for the cash and $10,000 for the jewelry—but it was "worth a lot more." No other witnesses testified on plaintiff's behalf, and no items were moved into evidence.

Defendant was offered the opportunity to cross-examine plaintiff but declined to do so. Defendant testified she did not have plaintiff's "things," and there was "no proof of jewelry" and "no proof of cash." Defendant did not call any witnesses to testify on her behalf and did not present any evidence. The record shows the judge admonished defendant during the proceedings and stopped a "paralegal"[2] she brought with her from practicing law without a license.

After considering plaintiff's complaint and the testimony, the judge determined plaintiff was "credible." The judge emphasized the text messages

---

[2] The "paralegal" is incorrectly referred to as "Mr. Durante, defendant's husband" in the trial transcript.

A-3478-24

between the parties demonstrated that plaintiff gave her money and jewelry to defendant, which created a "bailment." The judge reasoned that defendant was "under the obligation when she took the money . . . and jewelry" to keep these items "safe and secure," and defendant failed to do so. The judge highlighted that whether or not defendant "kept" plaintiff's money and jewelry or paid their mother "is irrelevant" because defendant became "responsible the second she took control."

The judge noted the text messages were "uncontradicted" and defendant "never challenged . . . [p]laintiff with respect to her testimony." The judge concluded plaintiff met her burden of proof and entered the order for judgment in favor of plaintiff and against defendant.

On April 29, 2025, defendant filed a motion for reconsideration. On May 9, 2025, the judge issued an order denying defendant's motion for reconsideration. The order stated the motion was filed under the incorrect Rule, and "the outcome would nevertheless be the same." The judge found the text messages were properly authenticated under N.J.R.E. 901, and properly admitted pursuant to N.J.R.E. 1003, which addresses admissibility of duplicates, and 1007, which addresses testimony or written admission of a party. This appeal followed.

Before us, defendant argues:

(1) the judgment must be vacated as the judge relied on plaintiff's "false testimony" in making his decision;

(2) the judge committed plain error warranting reversal;

(3) a bailment never existed and the ruling must be vacated; and

(4) the judge did not offer the "wide latitude" to defendant under the State and Federal Constitutions thereby depriving her of her right to a fair trial.

## II.

We first address the standard of review that guides our analysis. In an appeal from a bench trial, "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Township of North Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). Likewise, appellate courts defer to a trial court's evidentiary rulings absent an abuse of discretion. See Rowe v. Bell & Gossett Co., 239 N.J. 531, 551 (2019). However, "[a] trial court's

6

interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Importantly, "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021). "Moreover, the '[f]ailure to make a timely objection indicates that [other party] did not believe the remarks were prejudicial at the time they were made,' and it 'also deprives the court of the opportunity to take curative action.'" Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009) (alteration in original) (quoting State v. Timmendequas, 161 N.J. 515, 576 (1999)).

"Where [the defendant] has not objected, we generally will not reverse unless plain error is shown." Ibid. (citing R. 2:10-2). "[T]he question of whether plain error occurred depends on whether the error was clearly capable of producing an unjust result. Relief under the plain error rule . . . is discretionary

and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)); see also R. 2:10-2.

We review with deference a trial court's denial of a motion for reconsideration under Rule 4:49-2, and disturb those findings only upon an abuse of discretion. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Reconsideration does not afford dissatisfied litigants "a second bite at the apple." Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015).

III.

Defendant's arguments on appeal primarily challenge the judge's utilization of the marked screenshots of the text messages that were never formally admitted into evidence and did not identify the parties involved in the conversation. Defendant contends plaintiff "admitted" a third-party deleted them from her phone at defendant's "direction," which goes to the issue of authenticity. Defendant asserts the text messages do not fall under any exception to N.J.R.E. 901, which requires authentication or identification of an item of evidence, and constituted hearsay, warranting reversal and a new trial.

We evaluate defendant's arguments after considering the applicable evidentiary rules. First, N.J.R.E. 901 states that "[t]o satisfy the requirement of

authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the matter is what its proponent claims."  As the court pointed out in Kalola v. Eisenberg, "[N.J.R.E.] 901 'does not erect a particularly high hurdle.' . . . The proponent of the evidence is not required 'to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'"  344 N.J. Super. 198, 205-06 (Law Div. 2001) (citations omitted) (quoting United States v. Dhinsa, 243 F.3d 635, 658 (2d Cir. 2001)).

In addition, hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  N.J.R.E. 801(c).  Because hearsay is deemed "untrustworthy and unreliable," State v. White, 158 N.J. 230, 238 (1999), it is "not admissible except as provided by [the New Jersey Rules of Evidence] or by other law."  N.J.R.E. 802.  However, "if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay[,] and no exception to the hearsay rule is necessary to introduce that evidence at trial."  State v. Long, 173 N.J. 138, 152 (2002).

First, we reject defendant's argument that plaintiff's text messages were not properly authenticated under N.J.R.E. 901.  Plaintiff introduced sufficient

proof "to support a finding that the matter is what its proponent claims." N.J.R.E. 901. Plaintiff testified the text messages were taken directly from her phone, she did not alter them, and defendant's name, "Lisa," was under her phone number. The text messages were read into the record. The judge gave defendant the opportunity to cross-examine plaintiff about the text messages, which defendant argued were not dated, and lacked identification of the carrier. However, defendant declined to cross-examine plaintiff.

Second, we are satisfied it was not plain error for the judge to allow plaintiff to read the text messages into evidence and consider them in rendering his decision. See R. 2:10-2. Finding plaintiff credible, the judge concluded the text messages were exchanged between the parties and were not rebutted by defendant. The judge's findings were adequately supported by substantial credible evidence in the record supporting his conclusion that defendant sent the text messages to plaintiff's phone.

IV.

Finally, defendant asserts that the judge erred in finding a bailment was created. Defendant maintains plaintiff has not established the elements necessary for a bailment. According to defendant, the money was "confirmed"

A-3478-24

by plaintiff to constitute rental funds for her and her son, and there was never an "agreement" to return "alleged" cash and jewelry given to defendant.

"A bailment may be created by contract, either express or implied, or by operation of law or statute." LaPlace v. Briere, 404 N.J. Super. 585, 598 (App. Div. 2009). A bailor-bailee relationship is created "when a person leaves his [or her] chattel on the premises of another 'if the latter is given primary control of the chattel for the time being.'" Ibid. (quoting Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467, 469-70 (App. Div. 1952)). "Inherent in the bailment relationship is the requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished, or that it be kept until it is reclaimed by the bailor." Ibid. (quoting 8A Am. Jur. 2d. Bailments § 1 (1997)).

Where the subject of a bailment is either not returned, returned damaged to the bailor, or is lost, "the bailor may be able to recover under theories of either conversion or negligence." Id. at 600. After a plaintiff establishes that a bailor-bailee relationship exists and that there was a loss of goods while the goods were in the bailee's possession, "a presumption of negligence arises, requiring the bailee to come forward with evidence to show that the loss did not occur through

11

its negligence or that it exercised due care." Jasphy v. Osinski, 364 N.J. Super. 13, 19 (App. Div. 2003).

Applying these principles, we reject defendant's contention that the trial record failed to establish the existence of a bailor/bailee relationship. As noted, the judge found plaintiff credible that she gave defendant her money and jewelry. The judge found a bailment arrangement clearly arose when defendant accepted the items, and she was required to keep them "safe and secure."

Additionally, we reject as meritless defendant's contention a bailment did not arise because plaintiff failed to prove that the property existed because she produced no receipts or photographs of the "alleged inventory claims." The judge clearly credited plaintiff's testimony that defendant was entrusted with her money and jewelry. In response, defendant failed to rebut plaintiff's proofs and did not present any evidence to show otherwise. We have no reason to disregard those explicit and implicit findings as they are supported by the record. For the reasons expressed, the judge did not abuse his discretion in denying defendant's motion for reconsideration.

To the extent we have not specifically addressed any of defendant's arguments, it is because we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1) (E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3478-24